UNITED STATES of America, Plaintiff–Appellee,

v.

Maximiliano BAEZ, Defendant–Appellant.

No. 93–3868.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1995.

Decided June 27, 1996.

---

**10.** Hartsel received $31,972.59 in backpay, based on 1161.98 hours of owed holiday, vacation, and sick time.

Sharon L. Long (argued and briefed), Office of the U.S. Attorney, Cleveland, OH, for U.S.

Myron P. Watson (argued and briefed), Willis, Blackwell & Rogers, Cleveland, OH, for Maximiliano Baez.

Maximiliano Baez, Bradford, PA, pro se.

Before: MARTIN and RYAN, Circuit Judges; GILMORE, District Judge.*

GILMORE, District Judge.

Maximiliano Baez appeals the judgment entered on his guilty plea to Count One of an indictment for conspiring to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and to Count Eight of the indictment charging money laundering, in violation of 18 U.S.C. § 1956(a). Baez argues that (1) the district court abused its discretion in denying his request to withdraw his guilty plea and in refusing to conduct a hearing on the motion to withdraw; and (2) the district court abused its discretion in failing to establish a factual basis for the plea before entering judgment, as required by Fed.R.Crim.P. 11(f).

For the reasons discussed below, we conclude that these assignments of error are without merit. Accordingly, we AFFIRM the judgment against defendant Baez for conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and for money laundering in violation of 18 U.S.C. § 1956(a).

---

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

On March 17, 1993, a grand jury indicted Baez, along with eighteen other individuals. Baez was indicted in Count One for conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and in Counts Eight and Nine for money laundering, in violation of 18 U.S.C. § 1956(a).[1] The case was assigned to Judge Paul R. Matia of the United States District Court for the Northern District of Ohio. Baez was arraigned on April 1, 1993, and entered a plea of not guilty.

On May 28, 1993, Baez executed a written plea of guilty to Count One and Count Eight. The Rule 11 Plea Agreement signed by Baez contained a section setting forth the factual basis for his plea, which reads as follows:

15. The defendant agrees that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt, and that these facts accurately represent his readily provable offense conduct and specific offense characteristics.

Count 1:

As early as 1990, and continuing up to and through January 8, 1993, Maximiliano Baez unlawfully, willfully, intentionally, and knowingly agreed and did participate with Terry Bender, Antonia Toribio, and others with the distribution and possession with intent to distribute cocaine in the greater Cleveland, Ohio area.

Specifically, it was the defendant's role in the conspiracy to arrange with Terry Bender the deliver [sic] of more than 50 kilograms of cocaine to Cleveland, Ohio, and for the pick-up of money from Terry Bender in payment for cocaine previously delivered.

It was in this regards that on [sic] the defendant on January 7, 1993, sent Antonia Toribio to Cleveland, Ohio, for the purpose of picking up money from Bender for approximately 20 kilograms of cocaine previously delivered to Bender.

Count 8:

On or about January 8, 1993, the defendant sent another from New Jersey to Cleveland, Ohio, for the purpose of picking up or delivery of approximately $349,-417.00, which represented proceeds from drug trafficking activities, and to deliver said monies to a place outside the State of Ohio.

The court-appointed interpreter read the entire plea agreement to Baez before he signed it. Then Judge Matia made a thorough inquiry as to whether Baez understood the charges against him and his right to trial, and Baez assured the court that his plea was voluntary and that no threats or promises had been made other than what appeared in the plea agreement.

In establishing the factual basis for the plea, the court did not elicit narrative responses from the defendant regarding his conduct. Instead, the following exchange took place:

THE COURT: Now, if you would turn to page 6 of the plea agreement, paragraph 15, the heading is Factual Basis for the Guilty Plea. There are a number of facts set out in paragraph 15 about the details of what you did in this case. Have you read those facts?

DEFENDANT: Yes.

THE COURT: And do you agree with the statements as to your involvement in this offense that appear in that paragraph?

DEFENDANT: Yes.

The court then accepted the plea and adjudged Baez guilty on Counts One and Eight.

When Baez appeared for sentencing on August 4, 1993, more than two months after the plea hearing, he orally moved to withdraw his plea, asserting that his attorney had pressured him into signing the Rule 11 agreement. Although no formal hearing was conducted on the motion, the court gave Appellant the opportunity to explain his motives for seeking to withdraw his plea. After hearing Baez's argument, Judge Matia denied the motion, making the following statement:

This Court made a thorough inquiry at the time of the plea as to whether the defen-

---

1. Count 9 was dismissed prior to Baez's plea.

dant understood what was going on, and the Court specifically asked him to read the factual basis for the plea agreement, and he agreed with the Court that was, in fact, what his conduct was.

I inquired whether he understood his rights, and he indicated that he did and that no threats or promises had been made other than what appeared in the plea agreement.

The Court finds that there is no basis for withdrawing the plea agreement on the day of sentencing, and therefore the Court will overrule the request to withdraw the plea.

Judge Matia then sentenced Appellant to 320 months in prison, five years of supervised release, a fine of $25,000, and a $100 special assessment.

## II.

### A.

■ The first issue on appeal is whether the district court erred in denying Baez's motion to withdraw his guilty plea. We review a district court's decision to deny a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir.1991), *cert. denied*, 502 U.S. 1117, 112 S.Ct. 1231, 117 L.Ed.2d 465 (1992); *United States v. Head*, 927 F.2d 1361, 1375 (6th Cir.), *cert. denied*, 502 U.S. 846, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991). Rule 32(d) of the Federal Rules of Criminal Procedure provides that a court may permit a defendant to withdraw a guilty plea prior to sentencing "upon a showing by the defendant of any fair and just reason." The defendant has the burden of proving that withdrawal of the plea is justified. *United States v. Stephens*, 906 F.2d 251, 252 (6th Cir.1990).

■ In deciding whether to permit a defendant to withdraw a plea, the district court may consider a number of factors including: (1) the delay in filing the motion to withdraw the plea; (2) the reasons for any delay; (3) whether the defendant has consistently maintained his innocence; and (4) the circumstances underlying the plea and the background of the defendant. *Alexander*, 948

F.2d at 1004. Applying these factors to Baez's case, we conclude that the district court did not abuse its discretion in denying Baez's motion to withdraw his guilty plea.

Although Judge Matia did not specifically address each of the factors set forth above in ruling on defendant's motion, it is clear that the factors support his denial of the motion. The strongest factors supporting the district court's ruling are the sixty-seven day delay between the motion and the plea, and Baez's failure to justify this extensive delay. In *Alexander*, this court commented on the significance of an extended delay between a plea and a motion to withdraw, stating:

> Courts have noted that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.

*Alexander*, 948 F.2d at 1004. This circuit has previously upheld denials of motions to withdraw guilty pleas on the basis of delays less than the sixty-seven days here. *See e.g., United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir.1988)(fifty-five day delay recognized as lengthy and supported denial of motion to withdraw); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir.1987)(five week delay supports denial of motion to withdraw).

Also relevant is the fact that Baez failed to explain this long delay. In *United States v. Triplett*, 828 F.2d 1195 (6th Cir.1987), the court emphasized the importance of the justification for a delay in moving to withdraw a plea, explaining:

> The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.

*Id.* at 1197. Defendant Baez did not even mention his change of heart regarding his plea until the day of sentencing, August 4, 1993, when he informed his attorney of his intentions. Under such circumstances, Baez's failure to excuse his delay works

soundly against him. We conclude that this unjustified, last-minute change of heart is insufficient to support a motion to withdraw.

Other recognized factors also work against Baez. Some courts have held that the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea. *See United States v. Saft*, 558 F.2d 1073, 1082 (2nd Cir.1977). Here, Baez admitted his guilt at the plea hearing and did not reassert his innocence until the day of sentencing. There is also no evidence here of any unusual circumstances underlying the plea, such as defendant's naivete with respect to the criminal justice system. *See Alexander*, 948 F.2d at 1004.

In denying Baez's motion, the court emphasized that Baez had clearly stated to the court that he understood the charges against him, understood his rights, had not been pressured, and was satisfied with the representation he received from his attorney. Under these circumstances, it is clear that the district court did not err in denying Baez's motion to withdraw his guilty plea. As for Baez's claim that the court did not conduct an adequate hearing on the motion, we conclude that Judge Matia gave Baez an adequate opportunity to argue in support of his motion, and that no further consideration of the motion was necessary.

**B.**

Baez's second argument on appeal is that his guilty plea was improperly entered by the court without establishing a sufficient factual basis to support it. The factual basis requirement set forth in Rule 11(f) of the Federal Rules of Criminal Procedure reads as follows:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Rule 11(f) does not provide any guidance concerning the steps a district court should take to ensure that a factual basis exists. Here, Baez asserts that the district court failed to establish a factual basis for the plea

because it failed to specifically interrogate him and elicit his explanation of the conduct in which he engaged. Instead, the court relied on the fact that the interpreter read the entire plea agreement to Baez before he signed it, and on Baez's one word affirmations that he had read and agreed with the paragraphs setting forth the factual basis for the plea. The question before this court is whether Judge Matia took sufficient measures to satisfy Rule 11(f)'s requirements. We conclude that he did.

In *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir.1988), a panel of this court held that a district court "may determine the existence of the Rule 11(f) factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant." Also, in *United States v. Syal*, 963 F.2d 900, 907 (6th Cir.1992), the court held that the district judge could rely on testimony given in the government's case against defendant to establish the factual basis for the plea, so long as that testimony was combined with defendant's answers to the government's questions about whether defendant had committed certain acts. Thus, it is clear that this circuit has never required district judges to elicit detailed narrative responses from defendants to satisfy Rule 11(f)'s factual basis requirement.

However, certain practices have been rejected as insufficient to establish a factual basis. For example, in *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir.1986), the court held that a reading of the indictment and defendant's admission of guilt was not a sufficient factual basis determination. The court held that while a reading of the indictment and an admission by the defendant might be sufficient to establish a factual basis for a simple crime, when a defendant is facing a complex conspiracy charge, a mere reading of the indictment followed by an admission is not enough. *Id.* The court explained: "[w]e don't know the connection between defendant and the conspiracy and we don't know whether defendant understood the government had to prove a connection." *Id.* Thus, the court held that no factual basis had been established.

Viewing the circumstances surrounding Appellant's plea in light of these cases, it is clear that Judge Matia did more to establish a factual basis than to simply rely on a reading of the indictment. In addition to being informed of the charges against him, Baez was also presented with a fairly detailed written summary of the conduct in which he was alleged to have engaged. Because Baez does not speak fluent English, the court appointed an interpreter to read the entire plea agreement to Baez before the plea hearing began. During the hearing, Judge Matia specifically drew the defendant's attention to the paragraphs setting forth the factual basis for the charges against him. In responding to the Judge's questions, Baez admitted that he had read the paragraphs in question and that they accurately described his actions.

■ Courts from other circuits have held that a factual basis set forth in a plea agreement is sufficient to satisfy Rule 11(f). In *United States v. Abdullah,* 947 F.2d 306 (8th Cir.1991), *cert. denied,* 504 U.S. 921, 112 S.Ct. 1969, 118 L.Ed.2d 569 (1992), the Eighth Circuit found that where a plea agreement contained a factual basis supporting the counts to which defendant pled guilty, and both defendant and his attorney agreed to the paragraph's accuracy, a sufficient factual basis had been presented. The *Abdullah* court stated:

Because the plea agreement's description of the essential facts underlying the charge supports a finding of guilty, we hold that [defendant's] acknowledgment of the accuracy of the plea agreement's provisions satisfied Rule 11's requirement that the court establish a factual basis for defendant's guilt.

*Id.* at 309. *See also United States v. Guichard,* 779 F.2d 1139, 1146 (5th Cir.), *cert. denied,* 475 U.S. 1127, 106 S.Ct. 1654, 90 L.Ed.2d 197 (1986)(Court held that Rule 11(f) was satisfied when facts supporting charge were read into the record, defendant was asked if he would like to make any changes, and defendant answered in the negative). We adopt this conclusion and hold that when a plea agreement's written description of the essential facts underlying the charge supports a finding of guilty, the defendant's express acknowledgement of the accuracy of the agreement's provisions satisfies the requirements set forth in Rule 11(f).

■ Applying this conclusion to the facts at hand, it is clear that the conduct described in paragraph 15 of the plea agreement and confirmed by defendant Baez is sufficient to support Baez's conviction for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.

■ As for defendant's money laundering conviction, a recent *en banc* decision from this court clarifies that the factual basis set forth in Baez's plea agreement also supports his conviction on Count Eight of the indictment for money laundering in violation of 18 U.S.C. § 1956(a).

The federal money laundering statute under which Baez was convicted, 18 U.S.C. § 1956(a)(1)(A)(i), provides as follows:

(a)(1) Whoever, knowing that the property involved in a **financial transaction** represents proceeds of some form of unlawful activity, conducts or attempts to conduct such a **financial transaction** which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; ... shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(i) (emphasis added). The statute is clear that money laundering must involve a "financial transaction."

The factual basis for Baez's plea as set forth in the agreement states that Baez violated the money laundering statute when he sent another individual from New Jersey to Ohio for the purpose of picking up approximately $349,417.00 in drug trafficking proceeds and delivering the money to a place outside the state of Ohio. This factual scenario is similar to the defendant's conduct in *United States v. Samour,* 9 F.3d 531 (6th Cir.1993), in which Samour gave cash to a money courier in Ohio, which the courier

then transported to Arizona to pay off drug debts and to purchase drugs. Over a dissent by Judge Kennedy, the panel ruled to reverse Samour's money laundering conviction, holding that "merely transporting cash does not meet the definition of financial transaction" for purposes of 18 U.S.C. § 1956(a)(1). *Id.* at 536. In January, 1995, the court reached a similar conclusion in *United States v. Oleson,* 44 F.3d 381 (6th Cir.1995), relying on *Samour* to reverse Oleson's conviction for money laundering on the grounds that defendant's mere transportation or delivery of cash was not a "financial transaction" under to 18 U.S.C. § 1956. *Oleson,* 44 F.3d at 384.

Although these decisions would have compelled this court to conclude that Baez's acts of arranging for the pick-up or delivery of drug proceeds by a courier for transport across state lines could not support a conviction for money laundering in violation of 18 U.S.C. § 1956, this issue was recently revisited by this court in *United States v. Reed,* 77 F.3d 139 (6th Cir. 1996). In *Reed,* the *en banc* court overruled *Samour* and *Oleson* to the extent that those cases found that the conduct of delivering drug proceeds or money intended to purchase drugs to a courier "did not amount to, in the parlance of § 1956, conducting or attempting to conduct a transfer or delivery that involved the movement of funds by wire or other means or involved currency of the United States." *Id.* at 143 (internal quotations omitted).

Applying the *Reed* decision to the facts of this case, there is no doubt that the conduct described in paragraph 15 of Baez's plea agreement constitutes a "financial transaction" in violation of 18 U.S.C. § 1956(a). Accordingly, this court finds that defendant's conviction for money laundering was supported by a factual basis as required by Federal Rule of Criminal Procedure 11(f).

### III.

For the foregoing reasons, we AFFIRM defendant's convictions for conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and

for money laundering in violation of 18 U.S.C. § 1956.