107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles E. LESTER, Defendant-Appellant.
 No. 95-3819.
 United States Court of Appeals, Sixth Circuit.
 Feb. 13, 1997.
 
 Before: NELSON, MOORE, and COLE, Circuit Judges.
 COLE, Circuit Judge.
 
 
 1
 Charles E. Lester appeals his conviction and sentence on federal firearms charges challenging: (1) the district court's refusal to grant Lester's motion to withdraw his guilty plea; (2) the constitutionality of 18 U.S.C. § 922(g)(1) prohibiting the possession of a firearm or ammunition by a convicted felon; and (3) his sentence enhancement under 18 U.S.C. § 924(e). For the reasons that follow, we affirm.
 
 I. BACKGROUND
 
 2
 Defendant Charles E. Lester was charged in a three-count indictment with violations of federal firearms laws. Counts 1 and 3 of the indictment alleged that Lester violated 18 U.S.C. § 922(g)(1) by possessing a firearm or ammunition as a convicted felon. Specifically, Count 1 alleged that Lester was in possession of a .12 gauge shotgun. Count 3 alleged that Lester was in possession of two rounds of .12 gauge shotgun shells. Count 2 alleged that Lester was in violation of 26 U.S.C. § 5861(d), because the gun identified in Count 1 of the indictment had been reduced in length and was not registered in the National Firearms Registration and Transfer Record.[1]
 
 
 3
 Lester was arraigned on January 24, 1995 and pleaded "not guilty" to all three counts of the indictment. The government subsequently gave notice of its intention to seek an enhanced sentence under 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA), based on four of Lester's prior state convictions. Section 924(e) requires that prior convictions relied upon must be either violent felonies or serious drug offenses.
 
 
 4
 Plea negotiations followed, and on March 14, 1995, the parties entered into a written Plea Agreement. Pursuant to the Plea Agreement, Lester would plead guilty to Count 1 of the Indictment and receive the mandatory minimum sentence of 15 years' imprisonment as set out in § 924(e). In exchange for the plea, the government would move for dismissal of Counts 2 and 3 of the Indictment.
 
 
 5
 On April 4, 1995, the district court held a change-of-plea hearing at which Lester admitted his guilt and acknowledged agreement with the terms of the Plea Agreement. The district court initially accepted Lester's plea of guilty; however, Lester then expressed concerns regarding his ability to raise issues on appeal challenging his conviction. After hearing Lester's concerns, the district court ended the hearing by rejecting the Plea Agreement and maintaining Lester's previously entered pleas of not guilty to all counts.
 
 
 6
 On April 17, 1995, the district court held a second hearing regarding Lester's change of plea. At that hearing, Lester reaffirmed his decision to enter into the Plea Agreement. After a colloquy with Lester, the court accepted Lester's guilty plea and referred the matter for preparation of a Presentence Investigation Report.
 
 
 7
 On June 7, 1995, Lester filed a motion to withdraw his guilty plea. The court considered this motion during an already scheduled sentencing hearing which took place on June 26, 1995. At this proceeding, Lester asserted that he was, in fact, innocent of the charges. The district judge questioned Lester at length and discussed the delay between his guilty plea and subsequent motion for withdrawal of his plea, his criminal background and experience with the justice system, and his prior admissions of guilt. The judge denied Lester's motion for withdrawal of his guilty plea and proceeded to impose sentence.
 
 
 8
 During sentencing, Lester objected to the court's consideration of his September 16, 1970 conviction for unarmed robbery for purposes of sentencing enhancement pursuant to § 924(e).[2] The Presentence Investigation Report indicated that it was not known whether the defendant was represented by counsel in that case. The district court stated that this conviction was not used to compute criminal history points, nor for purposes of sentencing enhancement.
 
 
 9
 In addition, Lester objected to consideration of his 1989 conviction for aggravated trafficking in drugs, arguing that this conviction should not be used to enhance his sentence under § 924(e) because it was not a crime of violence. The government responded that § 924(e) includes drug trafficking felonies, as well as crimes of violence. Lester did not specifically object to the 1989 conviction being considered as a drug trafficking felony. The district court agreed with the government that the 1989 conviction was a drug trafficking felony and included that conviction for purposes of sentencing enhancement. The court then sentenced Lester to 15 years' imprisonment in accordance with the Plea Agreement. Counts 2 and 3 were then dismissed. Lester now appeals.
 
 II. WITHDRAWAL OF GUILTY PLEA
 
 10
 We review a district court's decision to deny a motion to withdraw a guilty plea for abuse of discretion. United States v. Alexander, 948 F.2d 1002, 1003 (6th Cir.1991), cert. denied, 502 U.S. 1117 (1992). "[P]ermission to withdraw a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court." United States v. Goldberg, 862 F.2d 101, 103 (6th Cir.1988). Plea withdrawals are governed by Federal Rule of Criminal Procedure 32(e) which provides in part: "[i]f a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Therefore, the defendant bears the burden of proving that withdrawal of the plea is justified. United States v. Stephens, 906 F.2d 251, 252 (6th Cir.1990).
 
 
 11
 This court has stated that the aim of Fed.R.Crim.P. 32(e) is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.' " Alexander, 948 F.2d at 1004 (quoting United States v. Carr, 740 F.2d 339, 345 (5th Cir.1984), cert. denied, 471 U.S. 1004 (1985)).
 
 
 12
 In United States v. Spencer, 836 F.2d 236 (6th Cir.1987), we enumerated the factors that a district judge may consider in determining whether a defendant has established a "fair and just reason" for withdrawal of a guilty plea. These include: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) why the grounds for withdrawal were not presented earlier; (3) whether the defendant has asserted and maintained his innocence; (4) the circumstances underlying the guilty plea; (5) the defendant's nature and background; and (6) whether the defendant has admitted guilt. Id. at 238-40. If the defendant establishes a fair and just reason for allowing withdrawal, the court may also consider potential prejudice to the government in granting the motion. Id. at 240.
 
 
 13
 In the present case, Lester waited more than seven weeks, or fifty-one days, after entering his guilty plea to make a motion for withdrawal. This circuit has upheld denials of motions to withdraw guilty pleas on the basis of similar delays. See United States v. Baez, 87 F.3d 805, 808 (6th Cir.) (sixty-seven day delay was strongest factor supporting district court's denial of motion to withdraw), cert. denied, 117 S.Ct. 405 (1996); United States v. Bashara, 27 F.3d 1174 (6th Cir.1994) (six-week delay in filing motion supports denial despite fact that defendant expressed regret about plea only eleven days after entering it, was hospitalized for two weeks of the delay, and wrote letter stating that he wanted to withdraw plea fifteen days before formally filing his motion), cert. denied, 115 S.Ct. 909 (1995); Goldberg, 862 F.2d at 101 (fifty-five day delay viewed as lengthy and supported denial of motion to withdraw); Spencer, 836 F.2d at 239 (five week delay supports denial of motion to withdraw).
 
 
 14
 Moreover, Lester fails to present compelling reasons to justify his failure to state the grounds for this delay. As this court explained in United States v. Triplett, 828 F.2d 1195 (6th Cir.1987): "[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." Id. at 1197. Lester's motion to withdraw his guilty plea attributes the delay to ongoing discussions between Lester and his attorney concerning the merits of the case and withdrawal of his guilty plea. When pressed on this point by the district judge at the sentencing hearing, Lester failed to provide any articulable rationale for the extended length of such discussions.[3] Lester also attributed the long delay to his lack of familiarity with the federal criminal justice system. The district court dismissed this second assertion at the sentencing hearing based on Lester's involvement in the state system, and the likeness of the two systems with respect to the decision to plead guilty. Lester also indicated at the sentencing hearing that he had been distracted by his father's illness.[4]
 
 
 15
 As a basis for his motion to withdraw his guilty plea, Lester asserts his innocence. Lester argues that he maintained his innocence throughout the proceedings; however, the record does not support this assertion. As the trial judge noted, the sentencing hearing was the first time that Lester stated his innocence. In the Plea Agreement, Lester "acknowledge[d] that he is pleading guilty to Count 1 of the Indictment because he is in fact guilty of that charge." Lester subsequently admitted his guilt while under oath during the April 4, 1995 change-of-plea hearing, and again during the April 17, 1995 change-of-plea hearing. Finally, Lester once again acknowledged his guilt on May 11, 1995 to the probation officer who prepared the Presentence Investigation Report. Although Lester filed objections to several entries in the Presentence Investigation Report, he never objected to the paragraph indicating that he admitted his guilt in this offense.
 
 
 16
 We also are not persuaded by Lester's argument that the circumstances underlying his plea justify its withdrawal. Lester's motion for withdrawal states that he "was somewhat confused with the process" and "pressed for time." He asserts that his confusion concerning his appellate rights was evidenced by the need to hold two separate change-of-plea hearings. He maintains that his confusion also was apparent during the sentencing hearing when he stated that if he did not plead guilty he would be subject to life imprisonment.
 
 
 17
 The Plea Agreement set forth that "defendant understands that the charge set forth in Count 1 of the Indictment carries a maximum possible penalty of life imprisonment." However, the maximum possible penalty also was addressed during the April 4th plea hearing at which Lester's attorney explained that under the Sentencing Guidelines, Lester would be subject to an imprisonment range of 262 to 327 months if he went to trial and was convicted.
 
 
 18
 The district court found Lester's arguments unconvincing. We agree. The district court noted that Lester had been afforded two hearings to determine if he in fact wanted to plead guilty. He therefore had two opportunities to make a voluntary, knowing and intelligent plea. After the first hearing, Lester had thirteen days to reconsider his plea and discuss it with his lawyer; nonetheless, at the second hearing, Lester unequivocally reaffirmed his guilty plea. Lester then waited fifty-one days to ask the court to allow him to withdraw his guilty plea, without providing the court with compelling reasons to account for this delay.
 
 
 19
 Based on our review of the factors set forth in Spencer, and the district court's diligence in ensuring that Lester was aware of his rights throughout the proceeding, see Baez, 87 F.3d at 809, we find that the district court did not abuse its discretion in denying Lester's motion to withdraw his guilty plea.
 
 III. CONSTITUTIONALITY OF § 922(g)
 
 20
 Challenges to the constitutionality of a criminal statute are reviewed de novo. United States v. Brown, 25 F.3d 307, 308 (6th Cir.), cert. denied, 115 S.Ct. 640 (1994); United States v. Knipp, 963 F.2d 839, 843 (6th Cir.1992). Jurisdictional matters will be considered on appeal whether or not they are raised at the trial court level. United States v. Nukida, 8 F.3d 665, 668 (9th Cir.1993).
 
 
 21
 Lester argues that 18 U.S.C. § 922(g)(1) reaches beyond Congress's commerce powers, relying on the United States Supreme Court's decision in United States v. Lopez, 115 S.Ct. 1624 (1995). In Lopez, the Supreme Court struck down 18 U.S.C. § 922(q), a law which prohibited the possession of firearms within a school zone. First, the Court noted that § 922(q) is a criminal statute having nothing to do with interstate commerce. Second, the Court ruled that there was no "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." Id. at 1631.
 
 
 22
 Lester's argument that § 922(g)(1) suffers under the same infirmities as § 922(q) lacks merit. The Sixth Circuit has squarely addressed this issue in similar cases holding that § 922(g)(1) is a valid exercise of Congress' commerce powers. United States v. Turner, 77 F.3d 887 (6th Cir.1996); United States v. Chesney, 86 F.3d 564 (6th Cir.1996).
 
 
 23
 In Turner, we held that the jurisdictional element of § 922(g)(1) provides the requisite nexus to interstate commerce that was lacking in § 922(q). Specifically, we stated that "[r]equiring the government in each case to prove that a felon has possessed a firearm 'in or affecting commerce' ensures that the firearm possession in question affects interstate commerce and saves § 922(g)(1) from the jurisdictional defect that doomed § 922(q)." Turner, 77 F.3d at 889. As this court noted in Chesney, the jurisdictional element of § 922(g)(1), which requires that the gun be possessed "in or affecting commerce" is virtually identical to the jurisdictional element of § 1202(a) which required that a gun be possessed "in or affecting commerce." Chesney, 86 F.3d at 568. In its discussion of United States v. Bass, 404 U.S. 336 (1971), the Lopez Court evidenced approval of the constitutionality of § 1202(a). Chesney, 86 F.3d at 568.
 
 
 24
 To sustain a challenge to the district court's jurisdiction, a defendant who has pleaded guilty must establish that the face of the indictment failed to charge the elements of a federal offense. Mack v. United States, 853 F.2d 585, 589 (8th Cir.1988). The indictment in the present case plainly charged Lester with possessing a firearm in and affecting interstate commerce. Through his guilty plea, Lester admitted the factual basis for jurisdiction under § 922(g)(1). United States v. Mathews, 833 F.2d 161, 164 (9th Cir.1987); United States v. Bell, 70 F.3d 495, 498 (7th Cir.1995).
 
 
 25
 We therefore reject Lester's constitutional challenge to § 922(g)(1).
 
 IV. SENTENCE ENHANCEMENT
 
 26
 Lester's sentence was enhanced pursuant to 18 U.S.C. § 924(e)(1), which provides for a mandatory enhanced penalty of not less than fifteen years for an individual with "three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another."
 
 
 27
 In enhancing Lester's sentence, the court relied on a 1989 state drug trafficking conviction as one of the three requisite enhancement convictions, considering it to be a "serious drug offense." Lester now argues that his 1989 drug trafficking conviction does not qualify as a "serious drug offense" as defined by § 924(e). Thus, Lester argues that his sentence was imposed in violation of law. Pursuant to this court's ruling in United States v. Smith, 918 F.2d 664 (6th Cir.1990), cert. denied, 498 U.S. 1125 (1991), a defendant who has entered into a plea agreement that includes a specific sentence under Rule 11(e)(1)(c) may appeal a sentence if that sentence was imposed in violation of law or involved an incorrect application of the sentencing guidelines. Id. at 668; see also United States v. Newsome, 894 F.2d 852, 855-56 (6th Cir.1990); 18 U.S.C. § 3742(a), (c).
 
 
 28
 The government asserts, however, that this argument is being advanced for the first time on appeal. Although Lester's attorney did object to enhancement based on the state drug trafficking conviction during the sentencing hearing, his objection focused on the fact that the conviction was not a "crime of violence" as the following excerpt illustrates:
 
 
 29
 DEF. COUNSEL: If I may, your Honor. Mr. Lester asked that I request the Court not to consider paragraph 31, which identifies the November 19, 1989 conviction in Summit County for aggravated trafficking in drugs. He asked that I ask the Court to make a determination that his conviction is not a crime of violence and that accordingly it should not be considered by the court in the Government seeking an enhancement.
 
 
 30
 THE COURT: You would like to respond.
 
 
 31
 THE GOVERNMENT: Judge, I think the statute in question 924(e) includes not only violent felonies but also drug trafficking felonies.
 
 
 32
 THE COURT: That's correct. It is aggravated trafficking in cocaine, a felony of the third degree. Anything further?
 
 
 33
 DEF. COUNSEL: Not at this time, your Honor.
 
 
 34
 Thus, although Lester objected to the 1989 conviction being considered as a crime of violence, Lester did not object to the characterization of the offense as a serious drug crime. Lester contends that his general objection was enough to preserve this issue for appeal. We disagree. A general objection, without more, is not sufficient to preserve an alleged error for appeal, unless there is a showing that the error affected substantial rights of the defendant. United States v. Wells, 431 F.2d 434, 435 (6th Cir.1970), cert. denied, 400 U.S. 997 (1971). Therefore, the court must now determine whether the district court committed an error that affected Lester's substantial rights.
 
 
 35
 "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). The United States Supreme Court has set out three limitations on appellate authority under Rule 52(b): (1) there must have been an error which is a deviation from a legal rule in the absence of waiver; (2) the error must have been plain in the sense that it is clear and obvious; and (3) the error must have affected substantial rights, or in other words, the error must have been prejudicial in that it affected the outcome of the proceedings. United States v. Olano, 507 U.S. 725, 732-34 (1993).
 
 
 36
 Looking at the first prong of the Olano test, we must determine whether Lester has waived or forfeited his argument regarding the 1989 conviction. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.' " Olano, 507 U.S. at 733 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Forfeiture, on the other hand, "is the failure to make the timely assertion of a right." Olano, 507 U.S. at 733. Forfeiture, unlike waiver, does not extinguish a plain error under Fed.R.Crim.P. 52(b). Id. In the present case, Lester objected to consideration of his state drug trafficking conviction at the district court level, albeit on different grounds than those we are now being asked to consider. Based on the foregoing, we cannot conclude that Lester intentionally relinquished or abandoned the argument that he now raises; a better characterization is that Lester failed to make a timely assertion of that argument. We therefore hold that Lester's failure to raise the argument at the district court level constituted forfeiture, rather than waiver.
 
 
 37
 The second prong of the Olano test asks whether the alleged error was plain. Thus, the question becomes did the district court's consideration of Lester's 1989 conviction as a "serious drug offense" pursuant to § 924(e) constitute clear or obvious error.
 
 
 38
 Section 924(e) defines "serious drug offense" in relation to state crimes as follows: "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ... for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). The government's Notice of Intent to Seek Enhanced Sentence Under 18 U.S.C. § 924(e) provided in pertinent part:
 
 
 39
 4. That on or about November 14, 1989, in Case No. CR 89-101839, in the Summit County Common Pleas Court, Akron, Ohio, Charles E. Lester was convicted of aggravated trafficking in drugs in violation of Revised Code Sections 2925.03(A)(1).
 
 
 40
 The Presentence Investigation Report included this offense, indicating that it was a "felony of the third degree" and that Lester was "[s]entenced to Ohio State Penitentiary for one year, and costs."[5]
 
 
 41
 At the time Lester was sentenced, Ohio Revised Code § 2929.11 set forth the penalties for felonies. Lester relies on § 2929.11(D), which provided:
 
 
 42
 (D) Whoever is convicted of or pleads guilty to a felony of the third or fourth degree and did not, during the commission of that offense, cause physical harm to any person or make an actual threat of physical harm to any person or make an actual threat of physical harm to any person with a deadly weapon, as defined in section 2923.11 of the Revised Code, and who has not previously been convicted of an offense of violence shall be imprisoned for a definite term, and, in addition, may be fined or required to make restitution.
 
 
 43
 * * *
 
 
 44
 * * *
 
 
 45
 The terms of imprisonment shall be imposed as follows:
 
 
 46
 (1) For a felony of the third degree, the term shall one, one and one-half, or two years; ....
 
 
 47
 Ohio Revised Code Ann. § 2929.11(D) (Vol. 1: For offenses committed prior to July 1, 1996) (Anderson 1996) (emphasis added). Lester thus asserts that the maximum penalty that could have been imposed for his offense was two years.
 
 
 48
 However, § 2929.11(D) applied only to defendants who had "not previously been convicted of an offense of violence." Considering Lester's criminal history as set out in the Presentence Investigation Report, it would appear that Lester may have been convicted of an offense of violence, and subsection (D) therefore was not applicable. Moreover, § 2929.11(B)(3) provided in part:
 
 
 49
 (3) For an aggravated felony of the third degree:
 
 
 50
 (a) If the offender has not previously been convicted of or pleaded guilty to any aggravated felony of the first, second or third degree, aggravated murder, or murder ... the minimum term, which may be imposed as a term of actual incarceration, shall be two, three, four of five years, and the maximum term shall be ten years;
 
 
 51
 (b) If the offender has previously been convicted of or pleaded guilty to any aggravated felony of the first, second or third degree, aggravated murder or murder ... the minimum term shall be imposed as a term of actual incarceration of five, six, seven, or eight years, and the maximum term shall be ten years; ....
 
 
 52
 § 2929.11(B)(3) (Vol. 1: For offenses committed prior to July 1, 1996) (Anderson 1996) (emphasis added). Thus, if Lester's conviction for aggravated drug trafficking was considered an aggravated felony, the maximum term of imprisonment that could have been imposed was ten years.[6] Under those circumstances, Lester's 1989 conviction would have been classified as a serious drug offense pursuant to § 924(e). On the other hand, we must consider the sentence that actually was imposed as set forth in the Presentence Investigation Report: a definite term of one year. Thus, it would not appear that Lester's actual sentence was an indefinite sentence pursuant to § 2929.11(B)(3).
 
 
 53
 We make no determination whether Lester's 1989 conviction was an aggravated felony, nor do we hold that the State sentenced, or should have sentenced, Lester pursuant to § 2929.11(B)(3) rather than § 2929.11(D). We raise the issue to illustrate that the error alleged by Lester is not plain; it is neither clear nor obvious whether the maximum term of imprisonment prescribed by Ohio law for Lester's 1989 conviction was two years or ten years. Finding no plain error, we need not reach the issue of whether Lester was prejudiced, the third prong of the Olano test.
 
 V. CONCLUSION
 
 54
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 A shotgun is subject to registration if its overall length is less than 26 inches and its barrel length is less than 18 inches. 18 U.S.C. § 5845(a)(1) and (2). The shotgun Lester allegedly possessed had an overall length of 25 1/4 and a barrel length of 17 7/8 inches
 
 
 [2]
 At the sentencing hearing, Lester objected to the offense set out in paragraph 28 of the Presentence Investigation Report; however the briefs make it clear that Lester was in fact objecting to the September 16, 1970 conviction set out in paragraph 25 of the Presentence Investigation Report
 
 
 [3]
 When the trial judge pressed Lester on the issue, he responded:
 Well, I contacted my attorney to notify him that I wanted to withdraw my plea. He said that he would file a motion. After I gave considerable thought I just didn't want to enter a plea for thirteen (sic) years because in effect I maintained I wasn't guilty of the charge in the first place.
 J.A. at 134.
 
 
 [4]
 Lester's father was terminally ill with cancer. At the April 17 plea hearing, there was discussion of arranging for Lester to visit his father at the Akron City Hospital. J.A. at 115-17
 
 
 [5]
 Lester attached a copy of the Journal Entry for the aggravated trafficking offense to his appellate brief. This Journal Entry was not a part of the record before the district court; accordingly, we cannot consider it on appeal. Fed.R.App.P. 10(a)
 
 
 [6]
 In support of the proposition that Lester's conviction could have been considered an aggravated felony, the Ohio Supreme Court has held that when a defendant has been convicted of trafficking in drugs in violation of § 2953.03(A), the indefinite term of imprisonment prescribed by § 2929.11(B) is imposed. State v. Arnold, 573 N.E.2d 1079 (Ohio 1991)