**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anthony GREGORY, Defendant–**
**Appellant.**

**No. 00–2240.**

United States Court of Appeals,
Sixth Circuit.

July 26, 2002.

Before CLAY, GILMAN, Circuit
Judges; HAYNES, District Judge.*

CLAY, Circuit Judge.

Defendant appeals his conviction and sentence entered after a plea of guilty to conspiracy to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 846. Specifically, Defendant challenges the district court's denial of his motion to withdraw his guilty plea entered into pursuant to FED. R. CRIM. P. 11. Defendant contends on appeal that he has demonstrated pursuant to FED. R. CRIM. P. 32(e) "fair and just reason[s]" for the withdrawal of the plea, including that he was under a mistaken impression regarding the terms of the plea agreement when he entered

---

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

into it. For the reasons set forth below, we AFFIRM Defendant's conviction and sentence.

## BACKGROUND

On September 22, 1999, a federal grand jury handed down a multi-count indictment against Defendant, charging him, and co-defendants Richard Manning and Fredrick Gibson, with (1) conspiracy to distribute crack, in violation of 21 U.S.C. § 846 (count one); and (2) two counts of aiding and abetting in the distribution of crack, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2 (counts four and five).[1]

On April 25, 2000, Defendant pleaded guilty to count one of the indictment. The written plea agreement stated, among other things, that Defendant was subject to a mandatory minimum sentence of ten years imprisonment. It further provided that Defendant's period of incarceration would not exceed the midpoint of the Sentencing Guideline range that the district court found applicable, and provided that the government would move for a downward departure from the applicable Sentencing Guideline range if it determined that Defendant had provided substantial assistance.

As stated in the plea agreement, the parties stipulated to the following facts:

> On or about September 7, 1999, through on or about September 17, 1999, in the Eastern district of Michigan, Southern Division, namely in Inkster, Michigan, defendant ANTHONY GREGORY knowingly agreed with co-defendants Fredrick Gibson and Richard Manning to commit the crime of distribution of cocaine base. Specifically, defendant ANTHONY GREGORY supplied co-defendants Fredrick Gibson and Richard Manning with cocaine base (also known as "crack cocaine"), knowing that the substance was in fact cocaine base, that Richard Manning ultimately sold to Agent Joseph Secrete while Agent Secrete was acting in an undercover capacity.

(J.A. at 54.)

At Defendant's plea hearing, the district court asked a series of questions to ensure that Defendant was, in fact, pleading guilty because he was guilty. The district court asked Defendant to tell the court in his own words what he did. The following colloquy transpired:

> Defendant: I'm guilty of aiding and abetting.
>
> The Court: Aiding and abetting in the conspiracy? From your prospective, tell me what you did.
>
> Defendant: I gave Richard Mann some drugs.
>
> The Court: You gave them to him?
>
> The Court: You didn't sell them to him?
>
> Defendant: No, I didn't sell them to him. I gave them to him on consignment.
>
> The Court: He was going to sell them and pay you some money?
>
> Defendant: Right.
>
> The Court: Did you know he was going [to] sell them to anybody else?
>
> Defendant: Yes.
>
> The Court: Is that your understanding?
>
> Defendant: Yes.
>
> The Court: He was going to take the drugs that you gave to him on consignment and sell to other people?
>
> Defendant: Yes.
>
> The Court: Then pay you back?
>
> Defendant: Right.

---

1. The indictment also asserted other charges against Manning and Gibson that are not at issue in this appeal.

The Court: When did that happen?

Defendant: In September. In September. In September.

The Court: Of '99?

Defendant: Yes.

The Court: That was here in the Eastern district of Michigan?

Defendant: Yes, it was.

. . .

Mr. Cohen: If I may, your Honor. Did you also have contact with Mr. Frederick Gibson regarding the sale of crack cocaine?

Defendant: I had contact with Fred.

Mr. Cohen: Would you describe what that consisted of?

Defendant: He, Fred, basically helped, distribute it for me.

Mr. Cohen: Did you know the drug that you gave to Richard Manning and Fred Gibson was crack cocaine?

Defendant: Yes, I did.

(J.A. at 125–26.)

The district court also asked the government to summarize the terms of Defendant's Rule 11 plea agreement. The government and defense counsel, Clyde Ritchie, indicated that the only issue the parties disagreed over was the amount of crack that should be attributed to Defendant. The government and Ritchie had calculated a sentencing range of between 97 and 121 months, but agreed that a ten-year mandatory minimum sentence under 18 U.S.C. § 841 would apply if the district court determined at sentencing that more than 50 grams of crack was involved in the offense. Further, the government informed the district court that pursuant to the plea agreement, Defendant promised to provide truthful and complete information regarding his offense and that the government would move for a downward departure from the otherwise applicable sentencing range and mandatory minimum only if it determined that Defendant's cooperation amounted to substantial assistance. The court asked both Ritchie and Defendant whether the government's recitation of the plea agreement's terms complied with their understanding of the agreement, and they both responded affirmatively. The district court then accepted the guilty plea.

After the entry of the plea, Defendant and the government met for debriefing. During that meeting, the government questioned Defendant about his involvement in the offense to which he had pleaded guilty, and he reiterated that he had conspired with Gibson and Manning to distribute crack. While Defendant once again admitted his involvement in the offense during the meeting, he denied that he had supplied Gibson with approximately 30 grams of crack that authorities found at Gibson's home, although the government had evidence to the contrary.

On May 25, 2000, the probation department issued Defendant's presentence investigation report ("PSIR"). The PSIR attributed more than 50 grams of crack to Defendant. The probation department also calculated Defendant's guideline range at 120 to 135 months. Apparently, the slightly higher guideline range than that determined earlier by the government and Ritchie was based on additional information the probation department had obtained concerning Defendant's criminal history as well as the fact that Defendant's sentence was subject to a statutory mandatory minimum of ten years imprisonment.

On August 8, 2000, the day before Defendant was to be sentenced, he filed a motion to withdraw his plea of guilty, pursuant to FED. R. CRIM. P. 32(e). Defendant claimed that he was actually innocent of the charge to which he had pleaded guilty, and that he had pleaded guilty only because Ritchie told him to do so and because Ritchie told him that if he pleaded

guilty he would be sentenced to only a three or five year term of incarceration. Defendant also moved to substitute Douglas R. Mullkoff for Ritchie, who had been his counsel up to that point. The district court granted the latter motion, and on August 9, 2000 held a hearing on Defendant's motion to withdraw his guilty plea.

During the withdrawal of plea hearing, the government contended that Defendant decided to withdraw his plea and proclaim his innocence only after he learned that the government would not move for a downward departure and that it planned to call Gibson to testify that Defendant had supplied him with the 31.16 grams of crack, which would implicate a ten-year mandatory minimum sentence. Mullkoff, Defendant's new counsel, countered that there was no record evidence of any of the government's assertions, and that Defendant did not even know that the government was not going to make a downward departure motion before August 2, 2000, when Mullkoff met with Defendant in jail. Defendant claimed that he had for some time been unhappy with his former counsel, Ritchie, and had asked his mother for money to hire a new lawyer. She finally was able to raise the money to hire Mullkoff, and it was at Defendant's first meeting with Mullkoff that Defendant learned about his misunderstanding with respect to the sentence he might receive. Defendant testified that he had not finished high school and that he can read "somewhat," he had no legal training and did not have adequate time to think about the plea agreement before he signed it.

Ritchie also testified at the hearing, and stated that he never told Defendant that there was a possibility that Defendant could debrief the government and still end up without a recommendation for a downward departure. Ritchie further testified that he believed that Defendant was left with the impression that he would receive less than a ten-year sentence. However, Ritchie also testified that he reviewed the contents of the plea agreement with Defendant in great detail while Defendant was in Macomb County Jail before Defendant entered his plea of guilty. Ritchie stated that he informed Defendant that he could potentially face a mandatory minimum sentence of ten years, if the court found that more than 50 grams of crack cocaine was involved in the offense. Moreover, Ritchie testified that he explained to Defendant that he could face a three or five year sentence only if it was determined that less than 50 grams of crack was involved in the offense, he was given a reduction for acceptance of responsibility, and the government moved for a downward departure. Ritchie further testified that he impressed upon Defendant the need to be truthful with the government.

Defendant also admitted during the hearing that when he met with the government for debriefing after the April 25 hearing on the entry of the plea, the government informed him that he had to be completely honest about his involvement in the offense or else the government would not move for a downward departure. He also admitted that after the debriefing the government requested that he submit to a polygraph examination and that he complied.

During the withdrawal of plea hearing, the district court also engaged Defendant in a lengthy exchange, reminding Defendant of statements he had made when he entered his plea of guilty. The court reminded Defendant, among other things, that Defendant had stated that he had understood he was testifying under penalty of perjury; that he had reviewed the terms of his plea agreement with his attorney, who had explained them to Defendant; and that he was informed that a mandatory minimum of ten years could

apply to the count on which he was pleading guilty. Defendant acknowledged that he remembered his statements made during the earlier hearing and the district court's questions. The district court then denied Defendant's motion to withdraw his guilty plea.[2]

The district court postponed sentencing, which originally was slated for that day (August 9), in order to give new defense counsel an opportunity to review the PSIR. At Defendant's sentencing, which was held on September 27, 2000, Mullkoff again moved to allow Defendant to withdraw his guilty plea, which the district court again denied. Co-defendant Gibson testified that he received 31 grams of crack from Defendant that authorities found at Gibson's home. Based on Gibson's testimony, the district court found that Defendant had conspired to possess with intent to distribute more than 50 grams of crack. Defendant's sentencing range under the guidelines was calculated at 151 to 188 months, without a reduction for acceptance of responsibility, considering Defendant's about face with respect to the plea agreement. Pursuant to the plea agreement, Defendant was sentenced to the midpoint cap of 160 months of imprisonment. This timely appeal followed.

## DISCUSSION

### I.

FED. R. CRIM. P. 32(e) provides that if made before sentencing, a motion to withdraw a guilty plea may be granted "if the defendant shows any fair and just reason." *United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir.1991). Such a motion is not granted automatically, but left to the discretion of the district court, "and we will reverse only for abuse of that discretion." *Id.* Defendant bears the burden of showing withdrawal is justified. *Id.*

### II.

The aim of FED. R. CRIM. P. 32(e) is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Alexander*, 948 F.2d at 1004 (citation and internal quotation marks omitted). In determining whether a defendant has met the "fair and just" standard, the district court may consider such factors as (1) the amount of time that elapsed between the plea agree-

---

**2.** In denying Defendant's motion, the district court explained its reasoning as follows:

> Fairness and justice requires that a defendant who's placed under oath and told that he's going to testify under oath pursuant to penalty of perjury, tell the truth, so that all of our time is not wasted and resources of the Court and Government is not wasted; that's what fairness and justice require. This is not a game. This is a deadly serious business we're all in.
>
> That's why I spend the time that I do, that's why I review the questions that I do with the defendant. Deadly serious game, because I want the defendants to know exactly what their obligations are and exactly what they are facing when they are here tendering a guilty plea. I view it as a very serious matter.

> . . .
>
> I don't find any basis here to reject the plea agreement. There is no question in my mind, based upon the testimony of Mr. Ritchie who testified that he met with Mr. Gregory at Macomb County jail, reviewed with him all of the terms, including the 10 year mandatory minimum possibility, and the fact he was under an obligation . . . before cooperation reduction would be given, that he was under an obligation to testify truthfully—truthfully, fully, completely, debrief with the Government, and it was at the Government's option. It's in the plea agreement. So I am going to deny the defendant's motion to withdraw his plea.
> (J.A. at 192–93.)

ment and the motion to withdraw it; (2) the reasons advanced for not presenting the grounds to the court earlier; (3) whether the defendant has asserted and maintained his innocence; (4) the circumstances underlying the entry of the guilty plea and the defendant's nature and background, including the degree to which the defendant had prior experience with the criminal justice system; and (5) the potential prejudice to the government if the motion to withdraw the plea is granted. *United States v. Durham*, 178 F.3d 796, 798 (6th Cir.1999); *United States v. Spencer*, 836 F.2d 236, 239–40 (6th Cir.1987). Applying these factors to this case, we conclude that the district court did not abuse its discretion in denying Defendant's motion to withdraw his plea.

1. Amount of time that elapsed between the plea agreement, and the motion to withdraw it, and the reasons advanced for not presenting the grounds to the court earlier

With regard to the first and second factors, this Court has held that "[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir.1987) (citation omitted). In the instant case, Defendant pleaded guilty on April 25, 2000 in open court, but did not move to withdraw his plea until August 8, 2000. This Court has upheld district court decisions denying motions to withdraw pleas that involved lesser periods of delay than the three-month delay at issue in the instant case. *See United States v. Baez*, 87 F.3d 805, 808 (6th Cir.1996) (affirming denial based on a sixty-seven-day delay and collecting cases).

Defendant contends that he delayed in withdrawing his plea because it was not until Mullkoff took over as his counsel that he realized that he had misunderstood the terms of his plea agreement. Defendant claims that he pleaded guilty only because Ritchie told him to do so, and that Defendant believed that if he pleaded guilty, he would receive a sentence of between three to five years. He contends that after meeting with his new counsel on August 2, 2000, he learned the plea agreement carried a likelihood of a sentence in excess of ten years. He contends that he did not hire a new lawyer sooner because he could not afford to do so. For reasons he never explains, Defendant claims he had lost faith in Ritchie and had asked his family to raise money to hire a new attorney shortly after his April 25, 2000 entry of plea hearing. Because it took his family a while to raise the money, Defendant was unable to actually hire a new attorney until August 2000, and did not file his motion to withdraw until August 8, 2000.

Defendant's arguments are unconvincing. A review of the testimony during the hearing to withdraw the plea clearly indicates that Defendant had been apprized of the terms of his plea agreement by the time he entered his plea of guilty. Ritchie testified that he reviewed the terms of the plea agreement completely with Defendant while Defendant was in jail, despite Defendant's claim that he himself never really read the agreement and that he only reviewed it with Ritchie for about ten to fifteen minutes. Ritchie testified that Defendant was fully aware of the possibility that he could receive a ten-year mandatory minimum sentence. Further, Ritchie testified that he never told Defendant that he would receive only a three-year sentence. Also, the district court engaged in a lengthy colloquy with Defendant to ascertain whether he fully understood the terms of his plea.

Defendant claims, however, that Ritchie admitted that he never discussed with De-

fendant the possibility that Defendant could debrief the government and still end up without a recommendation from the government for a downward departure. However, Defendant knew that the government would move for downward departure only if it determined that Defendant provided honest and truthful answers. Ritchie testified at the hearing to withdraw the plea that he told Defendant that a three or five year sentence might be a reasonable expectation assuming the government moved for a downward departure. He stated that he told Defendant that any such motion would hinge upon Defendant's cooperation with the government, and that he impressed upon Defendant that any such cooperation must be truthful. Further, the government also reminded Defendant during the debriefing session which took place immediately after the plea hearing that Defendant had to be truthful regarding his involvement in the offense.[3]

Where "a defendant is aware of the condition or reason for a plea withdrawal at the time the guilty plea is entered, a case for withdrawal is weaker." *Spencer,* 836 F.2d at 239. Although Defendant may not have *known* on April 25, 2000 that the government would not move for a downward departure, he knew that it was within the government's discretion not to do so, that the government had not yet decided to do so, and that the government would do so only if it determined that Defendant was being truthful with the information he provided. Defendant also knew that the district court's determination as to drug quantity would also affect his final sentence and that, based upon that determination, Defendant could be subjected to a

ten-year mandatory minimum sentence. *Cf. United States v. Stephens,* 906 F.2d 251, 253–54 (6th Cir.1990) (rejecting defendant's argument that he was blind-sided by being sentenced based on certain information, the specifics of which were not known to him when he entered his plea; defendant was aware that he would be sentenced to the mid-point of the guideline range that the district court would later determine to be applicable).

Defendant's challenge to his plea amounts to no more than a claim that he believes that he made a bad choice in pleading guilty. This Court has long held that such a reason is an inappropriate basis on which to allow withdrawal of a guilty plea. *See Alexander,* 948 F.2d at 1004. Because the record shows that by the time Defendant pleaded guilty he had been fully apprized of the terms of his plea agreement, including the fact that any sentence he might ultimately receive depended on his truthful cooperation with the government and the district court's finding as to the amount of drugs involved in his offense, we are unpersuaded by Defendant's claim that he delayed in withdrawing his plea because it was only after Mullkoff took over as counsel that he truly understood the terms of his plea agreement or that he could receive a sentence greater than three or five years.

2. Whether the defendant has asserted and maintained his innocence

Defendant asserts on this appeal, as he did in his affidavit submitted with his motion to withdraw his guilty plea, that he is innocent of the crime to which he pleaded guilty. He testified at his hearing to withdraw his plea that he pleaded guilty because his attorney told him to do so.

---

**3.** We note that although the results of Defendant's polygraph examination are not in the record, the fact that the government asked that Defendant submit to such an exam following the debriefing and his denials that he

supplied Gibson with approximately 31 grams of crack likely provided some notice to Defendant that the government did not believe that he was being completely truthful.

This factor cuts against Defendant. Defendant admitted his guilt at least twice before he ultimately decided to declare his innocence. He admitted his guilt of trafficking crack under oath during his entry of plea hearing on April 25, 2000, and again shortly thereafter during the debriefing session with the government. Belated claims of innocence without more are simply insufficient to justify withdrawal of a guilty plea. *See Spencer*, 836 F.2d at 239 (holding that defendant who had pleaded guilty and then a few days before sentencing filed a motion to withdraw claiming that he was innocent was not entitled to withdraw his plea). This Court in *Spencer* contrasted the case before it with a case decided by the D.C. Circuit in which the defendant had pleaded guilty pursuant to Rule 11 but had nevertheless maintained his innocence from the time the indictment was handed down. *Id.* (citing *United States v. Roberts*, 570 F.2d 999 (D.C.Cir.1977)). In the instant case, Defendant did not contend that he was innocent until several months after he pleaded guilty. *See Baez*, 87 F.3d at 809 ("Some courts have held that the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea.") (citations omitted). There certainly is no evidence of repeated and vigorous protestations of innocence in this case. Even assuming, as Defendant claims on this appeal, that he misunderstood the terms of his plea agreement, he still fails to explain why he could not and did not maintain his innocence before August 2000. He only offers that his attorney told him to plead guilty to accept the terms of the plea.

In *United States v. Goldberg*, 862 F.2d 101 (6th Cir.1988), this Court affirmed the district court's denial of the defendant's motion to withdraw his guilty plea, where the defendant earlier admitted under oath that he was guilty and also stated that he was satisfied with the representation provided by his counsel and that he was not under any duress or threat which induced his guilty plea. *Id.* at 103–04. In the instant case, Defendant also testified under oath at his plea hearing that he was guilty, explained to the district court in his own words the details of his offense, and stated that he was satisfied with his counsel. Further, Defendant has presented no allegation, let alone evidence, of coercion to force him to plead guilty. Therefore, this factor does not support Defendant's motion to withdraw his guilty plea. *Baez*, 87 F.3d at 809; *Goldberg*, 862 F.2d 103–04.

3. The circumstances underlying the entry of the guilty plea, the defendant's background, and the degree to which the defendant had prior experience with the criminal justice system

Defendant contends that he never finished high school and explained to the district court that he could read "somewhat." He further testified that he did not have adequate time to think about the plea agreement and that Ritchie testified that he was not sure whether Defendant had an opportunity to completely read the Rule 11 agreement before entering into the guilty plea. Further, Defendant testified that he signed the agreement while sitting in the courtroom on the day the plea was entered and that his attorney took only 10 to 15 minutes to explain it to him at that time.

None of these reasons support a finding that the district court abused its discretion. Defendant testified that he could read and write at his entry of plea hearing. He has never contended otherwise. Although he now complains that he did not have adequate time to consider his plea of guilty, we have already noted that the district court engaged Defendant in a lengthy colloquy during the entry of plea hearing to ensure that Defendant understood that he was pleading guilty because he was guilty and to ensure that Defen-

dant understood the terms of his plea agreement. Defendant failed at any time during the entry of plea hearing to indicate that he was unsatisfied with Ritchie, that he was innocent, or that he did not understand the nature of the charges against him or possible sentence he faced. While he contends that he did not fully read the plea agreement before signing it and signed it only after going over it with Ritchie for approximately 10 to 15 minutes, as has been explained, Ritchie testified that he had earlier fully explained the terms of the agreement to Defendant while Defendant was in jail. Defendant fails to show why the circumstances underlying his plea of guilty weigh in favor of allowing him to withdraw his plea. *Cf. Durham*, 178 F.3d at 799 (rejecting defendant's argument that the coercive nature of his plea supported withdrawal of the guilty plea as defendant failed to present credible evidence that he in fact had been coerced).

Defendant also fails to point to any other "unusual circumstances underlying the plea," such as his "naivete with respect to the criminal justice system," that would support reversing the district court. *Baez*, 87 F.3d at 809; *see also Spencer*, 836 F.2d at 240 (holding that defendant's "familiarity with the criminal justice system" weighed in favor of denying his motion to withdraw his plea). As the district court noted, Defendant is "not inexperienced with the criminal justice system." We agree. Although Defendant's PSIR appears to indicate that the drug offense at issue in this case is the first federal offense for which Defendant has been convicted, Defendant has been convicted in Michigan state court of escape, attempted possession with intent to deliver cocaine, and possession of marijuana. (J.A. at 263–64.) Further, at the time the PSIR was prepared, Defendant had been arrested seventeen times for various offenses, ranging from felonious assault to homicide. Thus, Defendant has asserted no basis for finding that the underlying circumstances of his plea or his background support permitting him to withdraw his guilty plea. *Baez*, 87 F.3d at 809; *Spencer*, 836 F.2d at 240.

4. Prejudice to the government

Finally, Defendant contends that the government has failed to show that it would suffer any prejudice if this Court allowed him to withdraw his guilty plea. Defendant points out that at his sentencing on September 27, 2000, the government was able to call at least one witness, co-defendant Gibson. However, we have held that prejudice to the government need not be established or considered unless and until the defendant has established a fair and just reason for vacating his plea. *Alexander*, 948 F.2d at 1004. Based on the factors already discussed, Defendant has failed to make such a showing.

Defendant's conviction and sentence are hereby AFFIRMED.