**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Rosalind K. REED, Defendant–Appellee.**

**No. 95–1567.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1995.

Decided March 1, 1996.

---

**140**

David J. Debold, Asst. U.S. Atty. (argued and briefed), Detroit, MI, for Plaintiff–Appellant.

Cornelius Pitts, Detroit, MI and William B. Moffitt (argued and briefed), Moffitt, Zwerling & Kemler, Alexandria, VA, for Defendant–Appellee.

Before: MERRITT Chief Judge; KENNEDY, MARTIN, MILBURN, NELSON, RYAN, BOGGS, NORRIS, SILER, BATCHELDER, DAUGHTREY, and MOORE, Circuit Judges.

KENNEDY, J., delivered the opinion of the court, in which MERRITT, C.J., MARTIN, MILBURN, NELSON, RYAN, BOGGS, NORRIS, SILER, BATCHELDER, DAUGHTREY, and MOORE, JJ., joined. MARTIN, J. (pp. 143–44), also delivered a separate concurring opinion.

KENNEDY, Circuit Judge.

The government appeals the pre-trial dismissal of three counts of money laundering on the basis that the delivery or transfer of cash is not a "financial transaction" within the meaning of the money laundering statute, 18 U.S.C. § 1956. A majority of this court voted to hear this case *en banc.* For the following reasons, we reverse the decision of the District Court.

**I.**

■ Defendant Rosalind K. Reed, a criminal defense attorney, is charged with two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) for, on each of two occasions, accepting approximately $100,000, which represented the proceeds of unlawful activity, and then arranging for delivery of the currency to California with the intent of promoting a client's continued marijuana trafficking.[1] She is also charged in a conspiracy count relating to the same acts. The government filed a pre-trial motion to submit these money laundering counts to the jury with the instructions that "a 'delivery' of cash is a 'financial transaction' " under the statute.

1. Since we are reviewing the dismissal of counts in an indictment, we read the indictment as a whole, accept the factual allegations as true, and construe those allegations in a practical sense with all of the necessary implications. *United States v. Barker Steel Co., Inc.,* 985 F.2d 1123, 1125 (1st Cir.1993).

The government's brief in support of the motion sought to distinguish this case from this Court's decisions in *United States v. Samour*, 9 F.3d 531 (6th Cir.1993), and *United States v. Oleson*, 44 F.3d 381 (6th Cir. 1995), which held that when a defendant delivered or caused the delivery of cash representing drug proceeds to another person for the purchase of more drugs, it was "mere transportation" and was not a violation of § 1956(a)(1)(A)(i).

In support of its motion, the government filed a brief indicating that its evidence would tend to establish the following:

At the time of her indictment on drug and money laundering charges, defendant was representing one Richard Sumpter. Sumpter was arrested in Detroit, Michigan, after he took possession of a van that had been driven from California to Michigan loaded with 560 pounds of marijuana. Apparently, Sumpter intended that this shipment of marijuana be sold by Jerome Maddox. Maddox lived in Detroit and was Sumpter's local distributor of marijuana. Maddox was also a neighbor of defendant. She, Sumpter, and Maddox were friends and defendant knew that Sumpter and Maddox were involved in the ongoing distribution of marijuana. Defendant was engaged to represent Sumpter.

During the course of this representation, defendant learned that Maddox owed Sumpter approximately $500,000 in past drug debts. Defendant conveyed messages back and forth between Sumpter and Maddox so they could determine the exact amount of the debt. Once they determined the exact amount, defendant facilitated repayment of the debt; she told Maddox to bring his marijuana proceeds to her office and arranged for the transfer of the money to a courier, who took the money back to California for Sumpter.

Two such transfers took place according to the government. The first occurred on or about February 11, 1994. Defendant arranged a meeting between Maddox and Sumpter's wife, who travelled to Detroit from California, so that Maddox could repay a portion of the money he owed Sumpter. The meeting took place at defendant's law office. When both individuals were present, defendant momentarily left her office, and Maddox gave Sumpter's wife approximately $96,000. Maddox then left the office and defendant returned. Pursuant to a prearranged plan, defendant and Sumpter's wife put the money in a bag and hid it in defendant's office where it would be picked up by a courier and transported to California for Sumpter. Within a few days a courier did indeed arrive at defendant's office. At defendant's direction, the office receptionist gave the bag containing the money to the courier.

The second transfer of marijuana proceeds occurred approximately one month later, on or about March 10, 1994. Defendant informed Maddox that Sumpter's wife was coming back to Detroit in order to collect more of the drug debt. Maddox arrived at defendant's office, as instructed by defendant, with approximately $96,000 in a cardboard box. He gave this money to Sumpter's wife. Once Maddox left, defendant and Sumpter's wife discussed the retrieval of the money by a courier. They put the money in a suitcase and, as before, hid it in defendant's office. A few days later the same courier arrived at defendant's office, took the suitcase, and transported the money to California. Federal agents arrested the courier upon his arrival in California.

The District Court, after finding itself bound by *Samour* and *Oleson*, denied the government's requested jury instruction and dismissed the money laundering counts. The government appealed pursuant to 18 U.S.C. § 3731, which authorizes it to appeal in a criminal case from an order dismissing an indictment as to any one or more counts.

## II.

The sole issue we revisit *en banc* is a discrete question of statutory interpretation: Whether the delivery or transfer of cash, which is the proceeds of unlawful activity, to another person is a financial transaction within the meaning of the money laundering statute, 18 U.S.C. § 1956. The government argues that it is, and that this court, sitting *en banc*, should overrule *Samour* and *Oleson* to the extent that the holdings of those cases are inconsistent with this position.

Defendant argues that *Samour* and *Oleson* were correctly decided and that the facts alleged do not constitute a financial transaction for the purposes of the money laundering statute.[2]

## III.

### A.

The counts dismissed by the District Court all alleged that defendant violated Title 18 U.S.C. § 1956(a)(1)(A)(i). That section states, in pertinent part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity;

\* \* \*

shall be [punished as set forth in this subsection].

"Financial transaction" is defined in § 1956(c)(4), which states, in pertinent part:

the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments....

"Transaction" is defined in § 1956(c)(3):

the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition....

Finally, the term "Monetary instruments" is defined in § 1956(c)(5) and includes "currency of the United States."

 We read these provisions to mean that giving drug proceeds to a courier is both a transfer and a delivery and involves the movement of funds by means of the courier,

which satisfies the definition of "financial transaction" found in § 1956(c)(4)(A)(i). Further, delivering funds to a courier involves monetary instruments, namely the currency, which satisfies the definition found in § 1956(c)(4)(A)(ii).

Thus, except for our decisions in *Samour* and *Oleson*, the allegations against defendant here state a violation of the statute—defendant, knowing that the money was the proceeds of marijuana trafficking, engaged in a financial transaction with the intent to promote the carrying on of further drug activity. We turn then to our decisions in *Samour* and *Oleson*.

### B.

The District Court dismissed the money laundering counts in the indictment because it found itself bound by this court's opinions in *United States v. Samour,* 9 F.3d 531 (6th Cir.1993) and *United States v. Oleson,* 44 F.3d 381 (6th Cir.1995).

*Samour* involved a defendant (Samour) who was convicted of money laundering under § 1956(a)(1)(A)(i) and (B)(i). On four separate occasions, Samour transferred drug proceeds to a courier who, in turn, used the proceeds to purchase marijuana and settle outstanding drug debts. *Samour,* 9 F.3d at 533–34. A panel of this court examined § 1956(a)(1)(A)(i) and the statutory definition of financial transaction in § 1956(c)(4) and concluded that "merely transporting cash does not meet the definition of a 'financial transaction' for purposes of the money laundering statute." *Id.* at 536. Applying this rule to the facts of the case as it understood them, a divided panel decided that Samour's activities constituted mere transportation and hence reversed his money laundering conviction. *Id.*

In *Oleson* a jury convicted the defendant of money laundering under § 1956(a)(1)(A)(i) for giving a courier over $100,000 in drug proceeds for the purpose of facilitating continued marijuana trafficking. *Oleson,* 44

---

**2.** Defendant also argues that the transaction alleged by the government does not satisfy the interstate commerce requirement in § 1956(c)(4). In light of the disposition of this case, and the fact that this argument was not considered below, we decline to address it sitting *en banc.* Defendant remains free to advance this argument in the first instance in the District Court.

F.3d at 384. The panel, finding *Samour* dispositive, held that these facts did not establish a requisite financial transaction and reversed the conviction. *Id.*

Upon re-examination of these cases and the money laundering statute, we now overrule *Samour* and *Oleson* to the extent that those cases found that the conduct of the respective defendants in delivering the money to a courier did not amount to, in the parlance of § 1956, "conduct[ing] or attempt[ing] to conduct" a "transfer [or] delivery" that "involv[ed] the movement of funds by wire or other means" or involved "currency of the United States."

█ Such conduct constitutes a transfer or delivery for the purposes of establishing a financial transaction. For example, in this case, defendant is alleged to have arranged for the exchange of the proceeds, accepted them into her possession, exercised control over the proceeds for a period of time, and authorized the release of the proceeds to another individual. Under these facts, the defendant here would clearly have effected a disposition of the proceeds. *See United States v. Puig–Infante,* 19 F.3d 929, 938 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 180, 130 L.Ed.2d 115 (1994).

█ We do not hold that the mere transportation of cash meets the definition of a financial transaction. There must be a purchase, sale, transfer, delivery, etc.—some disposition of funds. However, this is not a case of mere transportation. A jury could conclude that the conduct alleged in the indictment constitutes a financial transaction under the statute. Accordingly, we reverse the decision of the District Court and reinstate counts three, four, and five of the indictment. Our understanding of the statute is consistent with other circuits that have discussed the issue of whether a transfer or delivery of cash is a financial transaction within the meaning of 18 U.S.C. § 1956. *See United States v. Dimeck,* 24 F.3d 1239, 1246 (10th Cir.1994); *Puig–Infante,* 19 F.3d at 937–39.

**C.**

█ defendant argues that due process bars her prosecution based on any interpretation of the money laundering statute announced in this decision. She reasons that at the time of the alleged conduct, *Samour* was the law of the circuit, so she had no "fair notice" that she was actually violating the law. *See United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

To raise the question of whether the application of this decision to defendant is a violation of due process she must first establish the fact that she relied on our earlier decision in *Samour.*[3] *See United States v. Rodgers,* 466 U.S. 475, 484, 104 S.Ct. 1942, 1948, 80 L.Ed.2d 492 (1984). Only then does the legal issue of whether defendant's reliance was justified become ripe for consideration. *See Id.* Accordingly, this argument must first be raised in the District Court.

**IV.**

For the foregoing reasons, we reverse the order of the District Court dismissing the third, fourth, and fifth counts of the indictment, and remand this case to the District Court for further proceedings consistent with this opinion.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

I join the *en banc* court in its judgment and join with Judge Kennedy in much of the reasoning of her opinion, but write separately to point out two important issues this case presents which I believe need to be emphasized.

First, I note that "[t]he temptation of many men of good will is to cut corners, take short cuts, and reach the desired end regardless of the means." *Hannah v. Larche,* 363 U.S. 420, 494, 80 S.Ct. 1502, 1546, 4 L.Ed.2d 1307 (1960) (Douglas, J., dissenting). In this case, the United States presented facts to the district court perhaps insufficient to sustain a conviction under 18 U.S.C. § 1956(a)(1)(A)(i),

---

**3.** We note that this Court decided *United States v. Oleson,* 44 F.3d 381 (6th Cir.1995), after the

conduct in the indictment was alleged to have occurred.

given our prior interpretation of that criminal statute in *United States v. Samour*, 9 F.3d 531 (6th Cir.1993), and *United States v. Oleson*, 44 F.3d 381 (6th Cir.1995). The government then requested a specific jury instruction knowing it was contrary to the law of this Circuit. After the district court refused the proffered instruction, the United States asked the district court to dismiss the indictment as to the money laundering charges for the sole purpose of eventually obtaining an *en banc* review of this Circuit's previous interpretations of Section 1956(a)(1)(A)(i). In essence, the United States sought a dismissal of its own indictment in order to obtain a review of a law it did not like. Judge Kennedy's majority opinion makes no mention of this fact, and I simply emphasize here that our opinion should not be read as condoning such behavior.

The United States argues that this Circuit's interpretation of Section 1956(a)(1)(A)(i) foreclosed other avenues of review, save seeking a dismissal of its money laundering counts for the purposes of *en banc* review in the unique situation presented here. Be that as it may, I believe the district court erroneously dismissed the indictment upon the motion of the United States Attorney. The defendant, Rosalind Reed, should have been tried on the charges contained in the original multi-count, multi-defendant indictment. I believe, under either this or the superseding indictment, the United States should be able to try Reed and her codefendants for attempting to conduct a financial transaction that in fact involved a transfer of the proceeds of drug money for the purposes of furthering future specified unlawful activity.

However, we have no way of knowing whether the United States is able to prove anything at this stage of the case. In the district court, the United States simply sought a particular jury instruction on the definition of "financial transaction" knowing full well that, as it was phrased, the instruction was contrary to the law of this Circuit. When the district court refused, the United States asked for a dismissal of the money laundering counts in the indictment in order to pursue this appeal. In the meantime, Reed is left to ponder her impending prosecution because the United States has suspended prosecution against Reed on the other counts charged in the indictment pending this appeal. In any event, I simply point out that we should not encourage the use by the United States of this sort of procedural mechanism each time it disagrees with this Circuit's interpretation of a criminal statute. *See United States v. Stipe*, 653 F.2d 446, 449 (10th Cir.1981) (condemning the United States' attempt to "change the law of this circuit in order to expedite the prosecution of the case at hand").

Second, I note that the facts set forth in the majority opinion have not been proven, and we have no way of knowing whether Reed in fact committed the acts alleged in the indictment. The United States, of course, must prove that Reed knew the cash represented the proceeds from illegal activity and that she transferred the money with the intent to promote a specified unlawful activity. I fully agree with the majority's comment that "mere transportation" is not a violation of Section 1956(a)(1)(A)(i). However, if the United States can establish that Reed was involved with a large scale drug operation, that she knowingly accepted and secured the proceeds of unlawful activity, and then transferred them to another for the purpose of furthering the drug operation, the government would establish a violation of Section 1956(a)(1)(A)(i). Because no proof as to this alleged activity has been established, I cannot but agree with the majority that a trial should proceed.