**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0448n.06

Case Nos. 15-5419, 15-5493

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 03, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| KIMBERLY ROBINSON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| | ) | |
| | ) | |

**BEFORE: SUTTON, GRIFFIN, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant Kimberly Robinson ("Robinson") was tried and convicted for participating in drug trafficking and money laundering conspiracies. On appeal, Robinson presents five issues for review: (1) whether the district court committed reversible error by admitting hearsay statements under the coconspirator hearsay exception, (2) whether the government presented insufficient evidence for a rational juror to conclude that Robinson conspired to distribute at least five kilograms of cocaine, (3) whether the government presented insufficient evidence for a rational juror to conclude Robinson conspired to launder the proceeds from the drug trafficking conspiracy, (4) whether the district court erred in applying an obstruction-of-justice sentence enhancement, and (5) whether the district court imposed a procedurally and substantively unreasonable sentence. None of her arguments are convincing; therefore, we **AFFIRM** the district court.

**I.      FACTS**

Demond White ("D. White") led a cocaine distribution conspiracy in Knoxville, Tennessee from 2000 to 2013.  (Page ID# 1740, 1753.)   In 2007, D. White relocated to Fayetteville, Georgia, to utilize a cocaine supplier in the area.  (Page ID# 1750.)  Hope White ("H. White"), D. White's mother, stored D. White's drugs and money at her house in Knoxville, Tennessee.  (Page ID# 1827.)  Generally, D. White's distributors picked up cocaine from H. White and brought the drug sale proceeds back to H. White's house.  (Page ID# 1857–58.)  D. White used this money to purchase more cocaine in Georgia.  (Page ID# 1757.)

Shortly after D. White moved to Georgia his long-time friend, Robinson, asked D. White if she could traffic drugs for him.  (Page ID# 1757.)  Robinson's husband had lost his job and the couple was struggling financially.  (Page ID# 1756.)  D. White agreed to pay Robinson $1,000 each time she transported cocaine and $500 each time she transported cash.  (Page ID# 1759.)  On each trip, Robinson transported between one and six kilograms of cocaine and between $70,000 and $100,000 in cash.  (Page ID# 1761–62.)  D. White regularly paid Robinson for her drug trafficking trips directly from the cash Robinson brought him.  (Page ID# 1761.)

In 2012, the Knoxville Police Department began investigating the drug conspiracy.  After receiving judicial authorization to wiretap D. White, H. White, and several other coconspirators' phones, the police intercepted a telephone conversation between D. White and Robinson that indicated that Robinson had made a round trip from Fayetteville, Georgia to Knoxville, Tennessee.  (Page ID# 1696–97.)  After intercepting this phone call, the police installed a video camera outside H. White's home.  (Page ID# 1696–97.)  On two separate occasions, the police recorded Robinson visiting H. White's house in Knoxville, Tennessee.  (Page ID# 1697–98.)  During each visit, Robinson entered H. White's house empty-handed and left H. White's house,

less than eight minutes after arriving, with a bag in hand. (Page ID# 1700–02.) On June 11, 2013, the police obtained search warrants for D. White's home in Fayetteville, Georgia and H. White's home in Knoxville, Tennessee. (Page ID# 1710.) While executing the search warrant, the police intercepted D. White attempting to dispose of one kilogram of cocaine. Additionally, the police seized over $100,000 in cash from D. White, H. White, and D. White's coconspirators.

On June 18, 2013, a federal grand jury indicted Robinson for conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), (a)(1)(A)(i), and (B)(i). A jury convicted Robinson as charged, and the district court sentenced her to 292 months in prison.

## II.     COCONSPIRATOR STATEMENTS

Several of Robinson's arguments hinge on the premise that the district court committed reversible error by improperly admitting hearsay statements under the coconspirator hearsay exception. *See* Fed. R. Evid. 801(d)(2)(E). Therefore, we address this argument first.

Robinson concedes that she failed to timely object to the testimony in dispute. Therefore, we review the district court's evidentiary rulings for plain error. Fed. R. Crim. P. 52(b); *see United States v. Wilson*, 168 F.3d 916, 920 (6th Cir. 1999) ("If an evidentiary objection is not made at the time of the testimony, this court reviews the admission of the evidence for plain error.").

There are four parts to plain-error review. *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015), *reh'g denied* (Sept. 18, 2015), *cert. denied sub nom. Santana v. United States*, 136 S. Ct. 2007 (2016). First, there must be an error or defect that has not been affirmatively waived by the defendant. *Id.* Second, the legal error must be clear or obvious, rather than subject to

reasonable dispute. *Id.* Third, the error must have affected the appellant's substantial rights. *Id.* Fourth, if the first three prongs are satisfied, we may remedy the error; however, we exercise this discretion only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

As an initial matter, the government contends that this issue is unreviewable on appeal because Robinson stipulated to the admissibility of these hearsay statements, which waived her right to bring the issue of admissibility on appeal. A defendant affirmatively waives a claim when he or she intentionally relinquishes or abandons a known right. *United States v. Ruiz*, 777 F.3d 315, 320 (6th Cir. 2015); *see also United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) ("[A]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course."). Although Robinson stipulated to the admissibility of the telephone and text message conversations obtained by the police, Robinson did not stipulate that *all* prior statements of her alleged coconspirators were admissible. (Page ID# 1728–29, 1871.) Thus, while we agree with the government that Robinson waived her claim regarding the admissibility of the telephone and text message conversations, we disagree that her stipulation encapsulated every prior statement made by her alleged coconspirators. Thus, we review the challenged statements not encompassed by the stipulation for plain error.

Under a plain error review, the defendant must establish that the legal error is clear or obvious rather than subject to reasonable dispute. *Soto*, 794 F.3d at 655. A coconspirator's out-of-court statement offered against a defendant made during and in furtherance of a conspiracy is not hearsay. *See* Fed. R. Evid. 801(d)(2)(E). Under *United States v. Enright,* 579 F.2d 980 (6th Cir. 1978), the government must establish three factors by a preponderance of the evidence

before a district court may admit statements under Rule 801(d)(2)(E): (1) the conspiracy existed, (2) the defendant was a member of the conspiracy, and (3) the coconspirator's statements were made in furtherance of the conspiracy. *Wilson*, 168 F.3d at 920. The district court may consider the hearsay statements when inquiring into the existence of a conspiracy, but it must also consider the circumstances surrounding the statement, such as the identity of the speaker and the context in which the statement was made. *Id.* at 921 (quoting Fed. R. Evid. 801 (advisory committee note)).

In her brief, Robinson concedes that the government provided sufficient evidence to establish the existence of a conspiracy. Robinson argues for the first time on appeal that the government failed to prove (1) that she was a member of the conspiracy and (2) that the coconspirators made the disputed statements in furtherance of the conspiracy.

Robinson contends that the government failed to prove her participation in the conspiracy by a preponderance of the evidence. She claims that her coconspirators' testimony was the only evidence the government presented regarding her participation in the conspiracy. Robinson stresses the significance of the alleged coconspirators' bias and motive to testify against her in order to receive lowered sentences. To clarify, Robinson does not argue that the district court assigned undue weight to the out-of-court statements at issue when making its *Enright* findings. Rather, she argues that the coconspirators' testimony, as a whole, fails to establish her participation in the conspiracy because the witnesses' credibility is questionable. However, Robinson fails to show that the district court clearly erred in determining that she was a member of the conspiracy. Whether the coconspirators' credibility was questionable was a matter for the jury to decide. Therefore, this is an issue subject to reasonable dispute and is not clear legal

error. *See Soto*, 794 F.3d at 655 ("[T]he legal error must be clear or obvious, rather than subject to reasonable dispute.").

Additionally, contrary to Robinson's assertion, the government presented additional evidence that corroborated the coconspirators' testimony. This evidence included video surveillance of Robinson entering the "stash house" empty-handed and leaving, less than eight minutes later, with a bag in hand; cell phone records establishing that Robinson made round trips from Fayetteville, Georgia to Knoxville, Tennessee on days when she frequently contacted D. White and H. White; and testimony from Robinson's ex-husband, who saw Robinson give D. White a bag filled with cocaine. (Page ID# 1696–97, 1700–02.) Thus, contrary to Robinson's assertions, the government provided enough evidence for the district court to determine by a preponderance of the evidence that Robinson participated in the conspiracy.

Second, Robinson claims that the government failed to establish that the coconspirators made the disputed statements in furtherance of the conspiracy. Initially, we note that Robinson fails to specify which statements she is contending constitute inadmissible hearsay. It is not incumbent upon this court to meticulously review the entire record in an effort to identify each potential hearsay statement elicited at trial. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)) ("[I]t is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"). Since Robinson has failed to point us to the statements for which she takes issue, we decline to address her argument further.

Accordingly, we hold the district court did not clearly err in admitting the coconspirator statements.

### III.    INSUFFICIENT EVIDENCE

Robinson argues that the government presented insufficient evidence for a rational juror to conclude that she conspired to distribute at least five kilograms of cocaine and launder proceeds from the drug-distribution conspiracy.  For the reasons discussed below, we disagree.

### A.

When reviewing whether the evidence presented is sufficient to support a jury verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Dockery*, 42 F. App'x 799, 800 (6th Cir. 2002) ("Sufficient evidence exists if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt.").

### B.

Robinson argues that the government presented insufficient evidence at trial to support her conviction of conspiracy to distribute over five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  To establish a defendant's participation in a drug-distribution conspiracy under 21 U.S.C. §§ 846 and 841(a)(1), the government must demonstrate that (1) an agreement to violate drug laws existed, (2) the defendant had knowledge and intent to join the conspiracy, and (3) the defendant participated in the conspiracy.  *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).  "Proof of a formal agreement is not necessary," as the government must only show that "a tacit or material understanding among the parties" existed. *Id.*

Robinson makes a number of meritless arguments. First, Robinson concedes that the evidence presented at trial established that a cocaine-distribution conspiracy existed, but she argues that the proof failed to establish her participation in the conspiracy. Specifically, Robinson contends that the government's failure to catch her personally in possession of drugs or drug proceeds establishes the government's failure to present sufficient evidence to support her drug conspiracy conviction. However, this type of "smoking gun" evidence is not required to support a jury conviction for participation in a drug-distribution conspiracy. If the existence of a conspiracy is proven beyond a reasonable doubt, a defendant's connection to the conspiracy "need only be slight." *Id.* at 330. The government provided ample evidence for a reasonable juror to conclude that Robinson was connected to the cocaine-distribution conspiracy. At trial, the government presented testimony from law enforcement officers who worked on the conspiracy investigation, three of Robinson's coconspirators, including D. White and H. White, and testimony from Robinson's ex-husband. (Page ID# 781.)

Robinson attempts to discredit her ex-husband's and coconspirators' testimony by alleging that they were biased and lacked credibility because they were testifying in an effort to reduce their own sentences. However, it is the jury's responsibility to resolve conflicts in testimony, weigh evidence, and to draw reasonable inferences from the evidence presented. *Jackson*, 443 U.S. at 319. Accordingly, we decline to reevaluate the credibility of the witnesses and instead hold that the evidence was sufficient to establish that Robinson participated in the conspiracy.

Second, Robinson contends that the phone call and text message evidence that indicated that she made trips from Fayetteville, Georgia to Knoxville, Tennessee and was in frequent communication with D. White and H. White during those trips was too circumstantial to support

- 8 -

her conviction. Specifically, Robinson argues that this phone call and text message evidence was purely circumstantial due to the lack of any direct reference to cocaine trafficking in the messages and transcripts. This is not a false assertion, as D. White testified that none of the text message exchanges or phone call recordings directly discuss cocaine trafficking or distribution because he instructed each coconspirator, including Robinson, to avoid using phrases related to drug activity. (Page ID #1759–60; 1771–1772.) However, "the existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Martinez*, 430 F.3d at 330 (citation omitted). A reasonable juror could conclude that Robinson's choice not to directly mention cocaine trafficking or distribution in the text messages or phone calls was an intentional effort to comply with D. White's instructions in furtherance of the conspiracy. Accordingly, this argument is meritless.

Finally, Robinson argues that the government's evidence was primarily comprised of inadmissible hearsay evidence. As discussed above, the statements elicited from Robinson's alleged coconspirators fall within the coconspirator hearsay exception. Thus, the district court did not err in admitting them.

In conclusion, we hold that the government presented sufficient evidence for a rational juror to conclude that Robinson conspired to distribute at least five kilograms of cocaine.

## C.

Robinson also argues the government presented insufficient evidence for a reasonable juror to conclude that she participated in a money laundering conspiracy under 18 U.S.C. § 1956(h). To establish a money laundering conspiracy, the government must demonstrate (1) that two or more persons conspired to commit the crime of money laundering and (2) that the

defendant knowingly and voluntarily joined the conspiracy. *United States v. Prince*, 618 F.3d 551, 553–54 (6th Cir. 2010).

First, Robinson challenges her conviction for participating in a promotional money laundering conspiracy. Promotional money laundering is "the reinvestment of proceeds of unlawful activity into the illegal scheme from which the proceeds were derived." *United States v. Cosgrove*, 637 F.3d 646, 654 (6th Cir. 2011). To establish a promotional money laundering violation the government must demonstrate that the defendant (1) conducted a financial transaction that involved the proceeds of unlawful activity, (2) knew the property involved was proceeds of unlawful activity, and (3) intended to promote that unlawful activity. *Prince*, 618 F.3d at 554.

To contest her money laundering conviction, Robinson reasserts many of the same arguments she made regarding her drug-distribution conspiracy conviction. First, Robinson contends that the government's evidence was primarily comprised of inadmissible hearsay. As we have previously discussed, the district court did not err in admitting the hearsay evidence.

Second, Robinson argues that law enforcement's failure to catch her in possession of drugs or drug proceeds renders the conviction unsupported. However, since catching the defendant in the act of conspiring to commit money laundering is not an essential element of § 1956(h), the lack of this evidence does not support Robinson's conclusion that the government provided insufficient evidence to support her money laundering conviction.

Third, Robinson sweepingly claims that the government failed to provide sufficient evidence to establish any of the three elements of promotional money laundering. *See id.* In order for a financial transaction under § 1956(a)(1)(A)(i) to occur, there "must be a purchase, sale, transfer, delivery, etc.—some disposition of funds." *United States v. Reed*, 77 F.3d 139,

143 (6th Cir. 1996) (en banc). All three coconspirators testified regarding Robinson's drug trafficking role in the conspiracy, which involved Robinson taking cocaine to Knoxville, Tennessee for distributors to sell and bringing the cocaine sale proceeds back to D. White in Fayetteville, Georgia. Specifically, D. White testified that he often paid Robinson directly from the cash she brought him and that he used the funds Robinson transported to purchase more cocaine to continue the existence of the conspiracy. (Page ID# 1761.) Additionally, H. White testified that Robinson collected the drug sale proceeds from her home and delivered them to Fayetteville, Georgia on several occasions. (Page ID# 1828.) Thus, there was sufficient evidence to show Robinson was aware that the drug conspiracy existed and aided in its continuation by completing the financial transaction between D. White and his distributors.

Accordingly, viewing the evidence in the light most favorable to the government, a reasonable juror could conclude that Robinson knew D. White was conducting an unlawful cocaine trafficking business and that the proceeds Robinson transported were being used to further that activity.

In addition to her § 1956(a)(1)(A)(i) challenge, Robinson challenges the sufficiency of the proof presented regarding her conviction for participating in a concealment money laundering conspiracy, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). A violation of § 1956(a)(1)(B)(i) consists of three elements: (1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds. *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000).

Robinson argues that "merely hiding funds during transportation is not sufficient to violate the statute, even if substantial efforts have been expended to conceal the money." *Regalado Cuellar v. United States*, 553 U.S. 550, 563 (2008). We agree that the government failed to establish that Robinson violated § 1956(a)(1)(B)(i). The only evidence the government offered to prove that Robinson committed concealment money laundering regarded her transportation of funds in the trunk of her vehicle. Further, the government neglects to address this argument in its brief. As such, we determine that the government concedes that it presented insufficient evidence at trial to establish that Robinson conspired to commit concealment money laundering. *See Wright v. Knox Cty. Bd. of Educ.*, 23 F. App'x 519, 520 (6th Cir. 2001).

Unfortunately, for Robinson, her argument is futile. The language of § 1956(h) plainly allows a jury to convict a defendant for conspiracy to commit money laundering under promotional or concealment money laundering, and it does not require the government to prove that a defendant committed both types of money laundering. *See United States v. Prince*, 618 F.3d 551 (6th Cir. 2010) (upholding a defendant's conviction for violation of 18 U.S.C. § 1956(a)(1)(A)(i) without an additional 1956(a)(1)(B)(i) charge brought against him). The statute does not require the government to prove § 1956(a)(1)(B)(i) in order for a jury to convict the defendant under § 1956(h), but rather, requires that the government prove subsection § 1956(a)(1)(A)(i) *or* § 1956(a)(1)(B)(i).

Therefore, because the government provided sufficient evidence for a reasonable juror to conclude that Robinson conspired to commit promotional money laundering on the basis of U.S.C. § 1956(a)(1)(A)(i), we affirm Robinson's conviction for conspiracy to commit money laundering under § 1956(h).

## IV. SENTENCING ENHANCEMENT

Robinson alleges that the district court improperly applied an obstruction-of-justice sentencing enhancement under U.S.S.G. § 3C1.1 because it failed (1) to establish by a preponderance of the evidence that Robinson perjured herself at trial and (2) to consider the proof in the light most favorable to Robinson. To apply an obstruction-of-justice sentencing enhancement, a district court must (1) identify particular portions of the defendant's testimony that it considers to be perjurious and (2) make a specific finding for each element of perjury or make a finding that encompasses all of the factual predicates for a finding of perjury. *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002). The offense of perjury includes (1) a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony. *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012).

Specifically, Robinson argues that the district court should not have relied upon her coconspirators' conflicting testimony in deciding to apply the enhancement because "allegedly false statements should be evaluated in a light most favorable to the defendant." *United States v. Crousore*, 1 F.3d 382, 385 (6th Cir. 1993). However, the sentencing judge is not required to disregard all evidence that is unfavorable to the defendant. *Id.* at n.3. "[C]redibility determinations are for the trial court, not for the court of appeals. Unless the district court's finding of fact is clearly erroneous, we must accept it." *Id.* at 386. When a defendant's testimony is directly at odds with that of other witnesses, the sentencing judge resolves the conflict in credibility. *Id.* at 385–86. Robinson fails to identify any clear error made by the district court in its sentencing enhancement determination. She instead chooses to reiterate her previous arguments regarding her coconspirators' credibility. As we have determined above,

- 13 -

those arguments are unavailing. Therefore, the district court did not clearly err in its determination that at least some Robinson's statements were false.

Additionally, Robinson argues that the district court failed to establish that she perjured herself at trial by a preponderance of the evidence. Although "it is not enough for a sentencing judge to recognize conflicting testimony and resolve in his own mind which witness is credible," the district court can justify this determination by briefly identifying the perjurious statements and explaining why the intentional perjury was material. *United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir. 1995) *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 (1997)). In this case, the district court described precisely which statements it considered when making its obstruction-of-justice sentencing enhancement decision, and explained specifically why each statement was material to Robinson's case and constituted perjury. (Page ID# 2162.)

Accordingly, we affirm the district court's application of the obstruction-of-justice sentencing enhancement.

## V.    SENTENCING VARIANCE

In addition to her sentencing enhancement argument, Robinson contends that her sentence was procedurally and substantively unreasonable. We review sentences imposed by the district court for reasonableness, which includes both a substantive and a procedural component. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). To establish a procedurally reasonable sentence, a sentencing court (1) may not presume that the sentencing guidelines are reasonable, (2) must make an individualized assessment based on the facts presented, and (3) must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Gall v. United States*, 552 U.S. 38, 50 (2007). A substantively reasonable sentence "must be proportionate to the seriousness of the

circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *Curry*, 536 F.3d at 573. (internal citations and quotation marks omitted). When a sentencing court adequately explains why it imposed a particular sentence, we do not require the sentencing court exhaustively explain why it did not select an alternative sentence. *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006).

In determining Robinson's sentence, the district court explicitly considered the 18 U.S.C. § 3553(a) factors. Specifically, the district court considered (1) the seriousness of Robinson's underlying conviction; (2) Robinson's failure to cooperate with the government, unlike her coconspirators; and (3) Robinson's social and medical background. (Page ID# 2167.) Thus, we find no procedural error in the district court's sentencing determination.

Regarding the substantive reasonableness of Robinson's sentence, the district court adequately explained its decision to impose a higher sentence for Robinson than her coconspirator, D. White. (Page ID# 2171.) The district court noted D. White's substantial assistance with the government's case against Robinson and his willingness to accept responsibility for his crime. (Page ID# 2171.) Accordingly, we find that the district court adequately explained its sentencing determinations and imposed a reasonable sentence.

## VI.    CONCLUSION

For the foregoing reasons, we **AFFIRM** both Robinson's convictions and sentence.