NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0140n.06

No. 21-5109

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERCIA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| DANIEL SEGURA-CORRO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**FILED**
Apr 01, 2022
DEBORAH S. HUNT, Clerk

Before:  MOORE, WHITE, and BUSH, Circuit Judges.

MOORE, J., delivered the opinion of the court in which WHITE, J., joined.  BUSH, J. (pg. 11), delivered a separate opinion concurring in part and in the judgment.

**KAREN NELSON MOORE, Circuit Judge.**  Daniel Segura-Corro appeals his conviction and sentence for conspiracy to commit money laundering.  He argues that the evidence was insufficient to support his conviction and that his within-guidelines sentence was substantively unreasonable.  We hold that a rational juror could find that Segura-Corro conspired to commit promotional money laundering and that Segura-Corro has failed to rebut the presumption that his sentence was substantively reasonable.  Accordingly, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

In 2015, a confidential informant told police that Segura-Corro, a suspected drug dealer, was selling large quantities of cocaine to a woman named Issamary Hernandez-Herrera.  R. 99

(Pre-Sentence Investigation Report ¶ 7) (Page ID #364).[1]  After searching Hernandez-Herrera's home, car, and storage unit, police found over a kilogram of cocaine.  *Id.* ¶ 8 (Page ID #364–65). In a later interview, Hernandez-Herrera told police that Segura-Corro sold her over five kilograms of cocaine.  *Id.* (Page ID #365).

In 2018, police found half a kilogram of cocaine and two pistols in an apartment that Segura-Corro shared with another drug dealer.  *Id.* ¶ 12–14 (Page ID #365–66).  A year later, after conducting surveillance, police searched a different apartment that Segura-Corro rented and found methamphetamine and marijuana, and over $94,500 in cash in a toolbox.  *Id.* ¶ 17 (Page ID #366). Although Segura-Corro claimed that he received this cash from his employer, the police never saw him go to a job during the time that they spent surveilling him.  R. 150 (Trial Tr. Day 2 at 22, 92) (Page ID #686, 756).  The government charged Segura-Corro with two counts of conspiring to distribute cocaine, one count of possessing with intent to distribute methamphetamine, and one count of conspiring to commit money laundering.  R. 35 (Superseding Indictment at 1–4) (Page ID #84–87).

At trial, Fermin Hernandez-Ruvalcaba, a supplier who distributed cocaine to other drug dealers, testified.  R. 151 (Trial Tr. Day 3 at 139–43) (Page ID #986–90).  Hernandez-Ruvalcaba stated that he sold three or four kilograms of cocaine to Segura-Corro in either 2018 or 2019 for about $31,000 per kilogram.  *Id.* at 142–43, 152–53 (Page ID #989–90, 999–1000).  After Hernandez-Ruvalcaba delivered the cocaine, Segura-Corro paid him in two or three cash installments on a later date.  *Id.* at 142–43 (Page ID #989–90).

---

[1]Segura-Corro did not object to the portions of the pre-sentence investigation report cited in this opinion.  R. 153 (Sentencing Hr'g Tr. at 3–6) (Page ID #1073–76).  The district court adopted the findings of the report apart from one paragraph that is not relevant to this appeal.  *Id.* at 6–7 (Page ID #1076–77).

The jury also heard Hernandez-Herrera's testimony. She stated that in 2015, Segura-Corro sold her large quantities of cocaine, which she then sold to others in smaller quantities for profit. *Id.* at 45, 52, 55–57 (Page ID #892, 899, 902–04). In total, Hernandez-Herrera paid approximately $450,000 for the cocaine she purchased from Segura-Corro. *Id.* at 57 (Page ID #904). Hernandez-Herrera also testified that Segura-Corro and other drug dealers taught her how to wire some of her profit to family and friends in Mexico through wire-transfer companies. *Id.* at 47–50 (Page ID #894–97). Because the companies limited transfers to $2400 in a week, Hernandez-Herrera paid others to wire money for her. *Id.* at 47–48 (Page ID #895–96).

Regarding Segura-Corro's employment, the jury heard testimony from a coworker that Segura-Corro once worked at a thoroughbred horse farm—a job that did not pay a high salary—and that he also sold cars and jewelry to make money. *Id.* at 165, 167–70 (Page ID #1012, 1014–17). A police officer testified that he looked at Segura-Corro's paystubs but never saw employment records that would explain the amount of cash that police found in Segura-Corro's apartment. R. 150 (Trial Tr. Day 2 at 94, 163) (Page ID #758, 827).

Segura-Corro moved for a judgment of acquittal on various counts. R. 151 (Trial Tr. Day 3 at 156–57) (Page ID #1003–1004). Addressing the money-laundering count, the district court found that the evidence was sufficient for a jury to find that Segura-Corro conspired to commit money laundering by both concealing drug proceeds and promoting drug-trafficking activities. *Id.* at 161–63 (Page ID #1008–10). In support of its denial of the motion, the district court referenced Hernandez-Herrera's wiring of money to Mexico using other persons' names, the large amount of cash that police found in Segura-Corro's apartment, and the facts that police never observed Segura-Corro working and that Segura-Corro was behind on his lease payments (suggesting that

he did not have money to send to others for "gratuitous means"). *Id.* at 161–63 (Page ID #1008–10).

A jury found Segura-Corro guilty of the two counts of conspiracy to distribute cocaine, the conspiracy-to-commit-money-laundering count, and the lesser-included offense of possession of a substance containing methamphetamine. R. 72 (Jury Verdict Form) (Page ID #235–37). The district court sentenced Segura-Corro to 168 months in prison, the maximum sentence within the guideline range. R. 153 (Sentencing Hr'g Tr. at 9, 20) (Page ID #1079, 1090).

## II. ANALYSIS

### A. Sufficiency of the evidence on money-laundering conspiracy count

Segura-Corro argues on appeal that the evidence presented at trial was insufficient to establish that he conspired to commit money laundering. We review de novo the district court's denial of a motion for judgment of acquittal. *United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020). "When reviewing the sufficiency of the evidence, we assess whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015)). Because we must view the evidence in the light most favorable to the government and draw all reasonable inferences in its favor, Segura-Corro must overcome a "very heavy burden" to prevail. *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011) (quoting *United States v. Ross*, 502 F.3d 521, 529 (6th Cir. 2007)).

Under 18 U.S.C. § 1956(h), a person who conspires to commit a money-laundering offense is "subject to the same penalties as those prescribed" for the underlying offense. The superseding indictment for the underlying offense alleged that Segura-Corro conspired to launder money in

violation of § 1956(a)(1)(A)(i), which prohibits so-called "promotional" money laundering, and § 1956(a)(1)(B)(i), which prohibits so-called "concealment money laundering." R. 35 (Superseding Indictment at 3–4) (Page ID #86–87).[2] After the district court instructed the jury that it could find Segura-Corro guilty under either a promotional or concealment theory, the jury found that he conspired to commit money laundering. R. 73 (Jury Instr. at 29–33) (Page ID #270–74); R. 72 (Jury Verdict Form at 3) (Page ID #237).

We begin with promotional money laundering. "To prove conspiracy to commit promotional money laundering, the government had to show that [Segura-Corro] knowingly and voluntarily joined an agreement between two or more people to (1) conduct a financial transaction from the proceeds of illegal activity, (2) knowing the money came from illegal activity, and (3) intending to promote that activity." *United States v. Tolliver*, 949 F.3d 244, 248 (6th Cir. 2020). Segura-Corro argues that the government did not prove the first and third elements—that he agreed to conduct a financial transaction and intended to promote illegal activity. Appellant Br. at 23, 25.

The evidence at trial, however, supported the government's theory that Segura-Corro intended to promote his cocaine distribution activities through the exchange of drugs and cash.

---

[2]The relevant portion of 18 U.S.C. § 1956 states,

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
> > (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
> > . . .
> > (B) knowing that the transaction is designed in whole or in part—
> > > (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;
> > > . . .
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

"The paradigmatic example of [promotional money laundering] is a drug dealer using the proceeds of a drug transaction to purchase additional drugs and consummate future sales." *United States v. Warshak*, 631 F.3d 266, 317 (6th Cir. 2010). This form of "reinvesting" the proceeds "*promotes* the conspiracy by allowing it to continue or grow." *Tolliver*, 949 F.3d at 248. Hernandez-Herrera testified that she paid Segura-Corro over $450,000 for large quantities of cocaine. R. 151 (Trial Tr. Day 3 at 45, 52–53, 55–57) (Page ID #892, 899–900, 902–04). The $94,500 in cash that police found in Segura-Corro's home, along with evidence that Segura-Corro could not have made that much money through his job and side businesses, supports the inference that Segura-Corro was generating drug proceeds. Furthermore, Hernandez-Ruvalcaba testified that Segura-Corro purchased large amounts of drugs from him, and a juror could infer that those amounts were not for personal use. *Id.* at 142–43, 152–53 (Page ID #989–90, 999–1000). The timing of Hernandez-Ruvalcaba's deliveries and Segura-Corro's payments is somewhat unclear, but a jury could reasonably infer that Segura-Corro used the proceeds from some of Hernandez-Ruvalcaba's deliveries to pay for the remainder of the drugs. Putting this all together, a rational juror could find that Segura-Corro used the proceeds from drug sales like the one to Hernandez-Herrera to purchase more drugs from suppliers like Hernandez-Ruvalcaba to promote his drug business.

The record further reflects one additional fact supporting the government's promotional theory of money laundering. Hernandez-Herrera also testified that when she was in Mexico, Segura-Corro paid her for referring her drug customers in the United States to him. R. 151 (Trial Tr. Day 3 at 71–72) (Page ID #918–19). A jury could reasonably infer that Segura-Corro was using drug proceeds to pay Hernandez-Herrera for sending customers his way, thus promoting his drug business.

Segura-Corro's arguments to the contrary do not persuade us. Although Segura-Corro argues that the government presented no evidence of "movement of funds" as required under § 1956(c)(4)(A)(i)'s definition of "financial transaction," Appellant Br. at 23–24, the government presented evidence that Segura-Corro agreed to exchange cash for drugs in transactions such as the one between him and Hernandez-Ruvalcaba, and also exchanged cash for referrals. R. 151 (Trial Tr. Day 3 at 71–72, 142–43, 152–53) (Page ID #918–19, 989–90, 999–1000). Such exchanges undoubtedly constitute "movement of funds." *See United States v. Reed*, 77 F.3d 139, 143 (6th Cir. 1996) (en banc) (holding that a "purchase, sale, transfer, delivery," or other "disposition of funds" constitutes a financial transaction).

Segura-Corro also argues that there was insufficient evidence to establish that the $94,500 that police found in his apartment was intended to promote drug-trafficking activities. Appellant Br. at 25. In this regard, he notes that no evidence was presented regarding whether he paid for drugs in full or had them delivered on consignment. *Id.* Because, he asserts, the payment of money to a supplier for drugs delivered on consignment does not amount to "promotion" absent a subsequent sale of drugs, and there was no subsequent sale of drugs here, the government could not prove promotion with respect to the $94,500. *Id.*

In support of this argument, Segura-Corro relies on *United States v. Heaps*, 39 F.3d 479 (4th Cir. 1994), *abrogated on other grounds by United States v. Cabrales*, 524 U.S. 1 (1998), in which the Fourth Circuit reversed a defendant's conviction for money laundering and conspiracy to launder money on the ground that "[t]here was absolutely no evidence presented" that the defendant's payment for drugs "was made to create goodwill for subsequent drug transactions." *Id.* at 484. The Fourth Circuit further noted that in addition to there being no subsequent drug

transactions, "neither Government witness testified that the purpose of the payment was to encourage the defendant to supply more drugs. Rather, the payment was merely to satisfy a debt of a completed and, as far as the record shows, the final transaction." *Id.*

To the extent *Heaps* departs from "the binding precedent of our *own* circuit [that] makes clear" that "payment for drugs *can* constitute promotional money laundering," *Tolliver*, 949 F.3d at 247, we must disregard it. In any event, circumstantial evidence could lead a reasonable juror to conclude that Segura-Corro used drug proceeds from his sales to promote his drug business. *See United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010). The $94,500 in cash was simply circumstantial evidence that Segura-Corro was dealing in large sums.

The government may prove conspiracy to commit money laundering through promotion or concealment—both are "alternative bases for a money laundering conviction." *United States v. Martin*, 516 F. App'x 433, 446 (6th Cir. 2013) (quotation omitted). Because the evidence was sufficient to convict Segura-Corro under a theory of promotional money laundering, we decline to address his arguments regarding concealment money laundering.[3] *See United States v. Agundiz-Montes*, 679 F. App'x 380, 388 (6th Cir. 2017) (holding that defendant's conviction would still stand based on promotional-money-laundering theory even if government failed to prove concealment money laundering); *see also Griffin v. United States*, 502 U.S. 46, 47, 60 (1991)

---

[3]We note only that the government must provide "proof that the purpose—not merely effect" of the transaction "was to conceal or disguise a listed attribute" to support a theory of concealment money laundering. *Regalado Cuellar v. United States*, 553 U.S. 550, 567 (2008); *see also United States v. Faulkenberry*, 614 F.3d 573, 585–86 (6th Cir. 2010) (applying analysis in *Cuellar* to convictions under § 1956(a)(1)(B)(i)). "Concealment—even deliberate concealment—as mere facilitation of some *other* purpose, is not enough to convict." *Faulkenberry*, 614 F.3d at 586. The only evidence that the government provided to support concealment was that Hernandez-Herrera hired individuals to wire money to Mexico. Although one may question whether the government provided sufficient evidence that Segura-Corro conspired to wire the money to Mexico for the *purpose* of concealing the source or nature of the money, rather than to avoid the wire-transfer cap, we need not reach this issue because there was sufficient evidence to support a conviction of promotional money laundering, and we therefore decline to address it.

(upholding multi-object conspiracy verdict when government failed to prove that defendant was involved in one of the objects).

## B. Sentencing

Segura-Corro next challenges his sentence as substantively unreasonable. "For a sentence to be substantively reasonable, 'it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a).'" *United States v. Young*, 847 F.3d 328, 371 (6th Cir. 2017) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). A sentence within the guidelines range is presumed to be substantively reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). We review for an abuse of discretion the reasonableness of a district court's sentence. *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011).

The district court sentenced Segura-Corro to 168 months in prison, the highest sentence within the applicable guidelines range. R. 153 (Sentencing Hr'g Tr. at 24) (Page ID #1090). In challenging this sentence as unreasonable, Segura-Corro argues that the district court "placed undue weight on" a 2020 U.S. Sentencing Commission Report, which found that persons serving sentences longer than 120 months have lower rates of recidivism than those serving shorter sentences. Appellant Br. at 32; Ryan Cotter, U.S. Sent'g Comm'n, *Length of Incarceration and Recidivism* 4 (2020).

Segura-Corro challenges the district court's use of the 2020 report. Appellant Br. at 32. He asserts that "[t]here is no basis from the report to conclude that a sentence of 168 months has any greater deterrent effect than a sentence of 120 months." *Id.* The district court noted that for sentences longer than 60 months and longer than 120 months, "the longer the sentence, the greater

deterrent effect that the sentence has because there is a lower percentage of recidivism that occurs." R. 153 (Sentencing Hr'g Tr. at 17) (Page ID #1087). Because nothing in the report explicitly shows that a 168-month sentence would have a greater deterrent effect than a 121-month sentence, the report's findings alone do not justify imposing a sentence over 121 months.

Segura-Corro does not show, however, that the 2020 report unduly influenced the district court, which considered other circumstances such as Segura-Corro's unlawful re-entry into the United States and his ability to secure gainful employment. R. 153 (Sentencing Hr'g Tr. at 16–17) (Page ID #1086–87). Nor does Segura-Corro show that the district court erred when it considered the § 3553(a) factors and determined that a lesser sentence "would not adequately reflect the seriousness of the offense." *Id.* at 17 (Page ID #1087). Segura-Corro has therefore failed to rebut the presumption of substantive reasonableness that we must apply to his sentence.

## III. CONCLUSION

The evidence presented at trial was sufficient for a reasonable juror to find that Segura-Corro conspired to launder money with the intent to promote cocaine trafficking, and Segura-Corro has not shown that his within-guidelines sentence was substantively unreasonable. Accordingly, we **AFFIRM** the judgment of the district court.

**BUSH, Circuit Judge**, concurring in part and concurring in the judgment. I agree with the majority that Segura-Corro's conviction must be affirmed and that his sentence was substantively reasonable. I write separately to address two points in the majority's reasoning as to which my approach differs.

First, the majority properly concludes that the evidence sufficed for a reasonable jury to convict Segura-Corro of money laundering under a "promotional" theory. Because this conclusion is an independently sufficient basis to affirm the conviction, we need not address, even in passing, whether a "concealment" theory was proven as well. *But see* Majority Op. at 8 n.3. Indeed, the majority appears to concede that its inquiry on the subject is dictum, given that the "promotional" theory was enough to convict. *Id.* at 8–9. With respect, I would have called it a day after determining that the "promotional" theory sufficed. *See Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019).

Second, the majority suggests that the district court would have abused its discretion by relying on a report from the Sentencing Commission had the district court not also considered some additional facts about Segura-Corro's case, which happened to prevent the report from "unduly influenc[ing]" the district court. Majority Op. at 10. On this point too, I depart from the majority. The district court made the common-sense extrapolation from the report that longer sentences have a greater deterrent effect than shorter ones, and so it imposed a longer sentence in Segura-Corro's case to deter him from reoffending. That was an exercise of sound sentencing instincts—not an incipient abuse of discretion—and the majority's intimation to the contrary has no apparent basis in our precedent. *See United States v. Trevino*, 7 F.4th 414, 433 (6th Cir. 2021); *see also United States v. Robinson*, 892 F.3d 209, 212–17 (6th Cir. 2018).